Samuel B. Barker, use of Union National Bank, v. Lasow L. Barth.

88   23
a192s 460

1. Pleading—*Effect of Admission in.*—Under our system of pleading, the defendant may plead as many pleas as he deems necessary for his defense, however inconsistent they may be, and an admission made by any one plea can not be used against him upon an issue made by another plea.

2. Same—*Illustration of the Rule.*—If a defendant pleads the general issue and a special plea in confession and avoidance, the latter plea necessarily admits that the plaintiff has *prima facie* a cause of action, but the plaintiff can not use this admission as evidence; he must prove his cause on the issue made by the plea of general issue, as if there were no special pleas.

3. Promissory Notes—*Not Negotiable.*—A note, with the statement on the face, "This note is non-negotiable," is a non-negotiable instrument, and while it can, notwithstanding that fact, be transferred to a third party so as to vest him with the legal title, he can only take it subject to the then existing rights of the maker and such other rights as might accrue prior to his receiving notice of the transfer.

4. Set-Off—*Nature of the Plea.*—A plea of set-off is in the nature of a cross-action, and the same principles apply as in the case of an original suit on the claim pleaded as a set-off.

Assumpsit, on a promissory note. Error to the Circuit Court of Cook County; the Hon. Charles G. Neely, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 26, 1900.

Tenney, McConnell, Coffeen & Harding, attorneys for plaintiff in error.

Moran, Kraus & Mayer, attorneys for defendant in error.

Mr. Justice Adams delivered the opinion of the court.

This is a suit to reverse a judgment in favor of defendant in error and against plaintiff in error. The action was assumpsit in the name of plaintiff in error, for the use of the Union National Bank of Chicago. The suit was on a promissory note made by defendant in error, of date May 1, 1892, for the sum of $5,000, payable on or before May 1, ·

1895, to the order of S. B. Barker, with interest at the rate of seven per cent per annum. The defendant pleaded, as a set-off, a note made by the plaintiff, of date March 16, 1893, for the sum of $4,573.94, payable to the order of McElwee & Carney, with interest, alleging an indorsement of said note by McElwee & Carney to him, the defendant, for value. The court found for the plaintiff and assessed the plaintiff's damages at the sum of $6,750, and on the plea of set-off found that the plaintiff was indebted to the defendant in the sum of $5,457; that the difference between said sums, $1,293, was due the plaintiff as damages, and that the defendant had tendered to the plaintiff in open court the last mentioned amount, which was accepted by the plaintiff. And the court, on such finding, rendered judgment for the plaintiff for costs.

The declaration consists of two special counts and the common counts. The defendant pleaded the general issue and several special pleas, to which replications were filed. It is sufficient to say of the special pleas and the replications thereto, that they presented all defenses which the defendant claimed to have to the note sued on, and also all defenses which plaintiff claimed to have to the plea of set-off of the defendant. The questions raised by the special pleas and replications thereto are: Whether the defendant could set off, as against the plaintiff's demand, the note mentioned in his plea of set-off; if so, whether the set-off should, or not, be limited to the amount which the defendant paid for the note. Whether there was a partial failure of consideration for the note pleaded as a set-off, for which the plaintiff should have credit.

Written across the face off the note sued on are the words, "This note is non-negotiable." The note was given in pursuance of a contract in substance as follows:

Contract dated November 12, 1891, between Samuel B. Barker and L. L. Barth, by which Barker agrees to sell to Barth 100 shares of the stock of a corporation to be organized before May 1, 1892, for the sum of $10,000; to accept in payment $5,000 cash, and Barth's non-negotiable note

for $5,000, due on or before May 1, 1895, with interest at seven per cent, and to take as partial payment on the note any sums of $500 or more tendered. Barker agrees if Barth should die to pay to his heirs within sixty days thereafter the par value of the 100 shares of stock, less the amount remaining unpaid to Barker, on the note of $5,000, and also that if at the end of the second business year of the company, May 1, 1894, Barth desires him to buy back the stock by giving written notice on January 1, 1894, of such desire, he will take back the stock at par, paying in cash, on May 1, 1894, less such sum as is still due on the note. Barth agrees to purchase the stock, and to pay for the same $5,000 in cash, on May 1, 1892, and his non-negotiable note for $5,000, described as above, and to secure the note by the deposit of fifty shares of the stock as collateral security. All dividends on the stock shall be paid to Barker, and credited upon the indebtedness evidenced by the $5,000 note. Barth agrees to vote his stock to the best interests of Barker, and as he may direct. Signed and sealed by both parties.

The note which is, as above stated, payable to the order of S. B. Barker, the plaintiff, is not indorsed. The evidence as to the circumstances under which the Union National Bank of Chicago obtained possession of it is as follows:

It was admitted by counsel for the parties that if Mr. Odell, who was president of the Union National Bank, were present, he would testify that the note was taken by him, as president of the bank, with other paper; that the other paper was indorsed, but the note in question was not indorsed; that he did not notice that it was not indorsed, and there was no agreement that it should or should not be indorsed; that it was pledged to the bank as collateral security for loans from the bank to Barker largely in excess of the amount of the note; that at the same time, there was delivered to the bank a certificate of fifty shares of the capital stock of the Edward Hines Lumber Co., which had been pledged as collateral security for the note; that the

note was received by the bank as early as May 29, 1893, and that since said time it has been in the possession of the bank or its attorneys continually; that Barker was in the city of Chicago till February 11, 1897, and that the bank's attorneys saw him at different times, after the special pleas in the case were filed, and after they knew that the note was not indorsed. The note pleaded as a set-off was one of five notes given in pursuance of the following contract:

" CHICAGO, March 16, 1893.

S. B. BARKER & COMPANY, City:

We will sell you 1,500,000 feet of our inch lumber, such as shown to your Mr. Root in the pile in the docks of Stevens, at Marinette, Wisconsin, to be measured and inspected by George Gilbert, at 14 per thousand for merchantable lumber, and 7 per thousand for culls, same to be shipped at early opening of navigation, you to give up your notes payable to order of McElwee & Carney to the amount of $21,000, on an average time of ninety days from March 15th, each to pay one-half inspection fee.

Yours very truly,

PERLEY, LOWE & COMPANY.

Accepted.    S. B. BARKER & Co."

The firm of Perley, Lowe & Co. was composed of the firm of McElwee & Carney, the firm of Perley & Co., and a Mr. Seafield.

Four other notes were given in pursuance of the above contract. They are all dated March 16, 1893, signed by S. B. Barker & Co., and payable to the order of McElwee & Carney; one for $4,265.41, due June 5, 1893; one for $4,432.63, due June 7, 1893; one for $4,278.37, due June 10, 1893, and one for $3,849.65, due June 13, 1893.

Barker failed May 29, 1893. Barth was then absent from Chicago, in Illinois or Indiana. He learned of the failure from the newspapers May 30th, and a few days afterward he returned to Chicago and purchased from McElwee & Carney the note pleaded as a set-off, paying therefor the sum of $750, $250 of which he paid at the date of the purchase and the remaining $500 within a week or ten days thereafter. The evidence shows that he purchased the note to use it as a set-off against the note sued on.

Barth testified that he purchased the note June 5th or 6th, 1893, and Carney testified that the note was transferred to Barth between the 1st and 6th of June, 1893. Barth further testified that he saw the note sued on in Barker's possession in his, Barker's office, March 25, 1893; that Barker said he was hard up and could not use the note in the form in which it was, because it was non-negotiable, and offered to throw off the interest if he, Barth, would pay it, which proposition he, Barth, declined, not being able to raise the money at that time. Barth further testified that the first time he heard that Barker had parted with the note was after May 4, 1895, when he received the following notice from the bank:

"Union National Bank,
Northeast corner of LaSalle and Adams Street,
Chicago.

Mr. L. L. Barth:

Your note order of S. B. Barker for $5,000 and interest, three years, three days, at seven per cent, $1,052.92, total $6,052.92, matures at this bank May 1 to 4, 1895.

August Blume, Cashier.

Certified check or currency required."

Barth further testified that at the time he bought the note, he had no knowledge, information or notice that Barker had sold, transferred or parted with it, or had attempted to sell, transfer or part with it. There is no evidence that Barth had any notice of the pledge of the note sued on to the Union National Bank prior to, or at the time of the purchase by him of the Barker note pleaded as a set-off, or that he had any such notice prior to the receipt by him of the notice from the bank above quoted. We do not understand that counsel for plaintiff claims that there is any evidence that Barth had notice of the pledge to the bank prior to his purchase of the Barker note. But counsel seem to rely on what they denominate an admission by the pleadings. To defendant's plea of set-off to the first count of the declaration, the plaintiff, by leave of court, replied double, in substance as follows:

1. That the defendant obtained the note described in

his plea from McElwee & Carney, after he had notice that his note described in the declaration, and on which suit was brought, had been assigned by Barker to the Union National Bank for value.

2.   That the defendant obtained the note of Barker from McElwee & Carney after its maturity, and after his note on which this suit was brought had been assigned by Barker to the Union National Bank for value.

To these replications demurrers were sustained, when on motion of the plaintiff's attorney, leave was given to the plaintiff to file additional counts to the declaration *instanter*. It does not appear that the plaintiff elected to stand by his replications. ·

Counsel for plaintiff assume in their argument that the demurrer to these replications operate as admissions of the averments of the replications for all purposes, and supply the place of proof of such averments, including the averment that the defendant obtained the note pleaded as a set-off after he had notice that the note sued on had been assigned by Barker to the Union National Bank.

This position can not be maintained.   The general issue and special pleas of set-off were pleaded to the. whole declaration, and the decision of the issues made to such pleas could be determined only by the evidence.   Under our system of pleading, the defendant may plead as many pleas as he deems necessary for his defense, however inconsistent they may be, and an admission made by any one plea can not be used against him on an issue made by another plea. For instance, if defendant pleads the general issue and a special plea in confession and avoidance, the latter plea necessarily admits that the plaintiff has *prima facie* a cause of action; but the plaintiff can not use this admission as evidence, and must prove his case on the issue made by the plea of the general issue, as if there were no special plea.   The note being made non-negotiable by agreement of the parties to it, and the words, " This note is non-negotiable " being plainly written across its face, the fact of its non-negotiability is plain, and is not controverted by coun-

Barker v. Barth.

sel for plaintiff; but counsel contend that notwithstanding its non-negotiability, it was assignable so as to vest the legal title in the assignee. Even if the latter proposition is sound, we are of opinion that it is immaterial.

In National Bank v. Hines, 177 Ill. 417, the court, while holding that a non-negotiable note might be transferred to a third party, so as to vest in him the legal title, held also that the assignee would take it subject to all rights of the maker accruing prior to notice of the assignment. The court say :

" The note, with the statement on the face, ' This note is non-negotiable,' was a non-negotiable instrument, and while it could, notwithstanding that fact, be transferred to a third party so as to vest him with the legal title, he could only take it subject to the then existing rights of the maker, and such other rights as might accrue prior to his receiving notice of the transfer."

To the same effect see 1 Am. & Eng. Ency. of Law, p. 840; 1 Daniel on Neg. Instruments, Sec. 742; Chapman v. Shattuck, 1 Gilm. 49; Morris v. Cheney, 51 Ill. 451, 455; Himrod v. Baugh, 85 Ib. 435.

There are no circumstances in the present case which except it from the rule announced in the text books and cases cited.

But counsel contend that defendant's set-off or cross-claim should be limited to $750, the amount he paid for the Barker note, and urge, as a want of good faith on his part, that he purchased it with knowledge that Barker had failed, and for the purpose of setting it off against his note executed to Barker. The amount paid by the defendant for the Barker note is immaterial. 22 Am. & Eng. Ency. of Law, p. 284; Smith v. Warner, 16 Mich. 390; Walter v. Kirk, 14 Ill. 55; Burnap v. Cook, 32 Ib. 168; Farber v. Nat. Forge & I. Co., 50 Ill. App. 503.

In Smith v. Warner, *supra*, the court say :

" But it is also objected that the fact that defendants bought the demands at a very great discount is evidence that they did not hold them in good faith. This objection, however, evidently proceeds upon a misapprehension of the

meaning of the term ' good faith ' as used in the statute in
reference to the ownership of the claims offered in set-off.
All that the statute contemplates is that the demands shall
be actually and not merely colorably owned by the defend-
ants, and the actual ownership by the defendants is not dis-
puted in this case. The amount they paid for them is
immaterial."

A plea of set-off is in the nature of a cross-action, and the
same principles apply as in the case of an original suit on
the claim pleaded as a set-off. In Burnap v. Cook, *supra*,
the suit was by the assignee against the maker of a promis-
sory note, and the court say :

" It is not a question that affects the rights of these par-
ties, whether any or what consideration was paid for the
note by the plaintiff below."

Farber v. Nat. F. & I. Co., *supra*, is to the same effect.

Plaintiff's counsel further contend that there was a par-
tial failure of the consideration for the five notes of which
the note pleaded as a set-off is one, and that this partial
failure should be credited *pro rata* on the Barker note. The
evidence bearing on this question is as follows: The notes
given on the lumber contract aggregated $21,000. The
value as per contract of the lumber delivered up to the time
of Barker's failure amounted, with inspection fees, to
$19,500, and without inspection fees to $19,306. Carney
testified that the night of May 29, 1893, and before he sold
the Barker notes to Barth, he had a conversation with Bar-
ker; that at that time, Barker owed his firm about $28,000,
part of which was evidenced by notes, and about $12,000 of
which was open account; that this sum of $28,000 did not
include and was not evidenced by any of the five notes
given by Barker in pursuance of the lumber contract; that
he asked Barker for security, and Barker said that the bank
had everything he had, that all he could do was to give an
order on the bank for any surplus there might be over what
he owed the bank.

" He asked me how much he owed us, and I told him
about $28,000. He then said, ' Well, there is some of that
lumber you did not deliver from Menominee, you will give

me credit for that.' I said, ' Yes, we will give you credit for all the lumber that is not delivered on that contract.' Next morning I met him and he gave me an order on the bank to pay us out of any surplus remaining in their hands. In pursuance of this talk we gave him credit on his account for this $1,500 lumber owing under the contract."

It further appears from the evidence of Carney that at the time of the above recited conversation, his firm had not in their possession any of the five Barker notes given in pursuance of the lumber contract; that they were held by banks which had discounted them, but that subsequently, between June 1 and 6, 1893, and before the sale of the note to Barth, they took them all up. Counsel for plaintiff contend that McElwee & Carney could not credit the price of the undelivered lumber on other indebtedness of Barker to them, because the lumber for which the notes were given was not bought from McElwee & Carney alone, but from them and Perley, Lowe & Co. McElwee & Carney were partners of Perley, Lowe & Co. in the sale of the lumber evidenced by the contract of March 16, 1893; any one of such partners had the legal right to settle with Barker for the undelivered lumber, and we can perceive no legal objection to a settlement by any partner, by his crediting Barker with the contract price of the shortage in lumber on Barker's indebtedness. We also think it a reasonable inference from the evidence that the credit was made by agreement with Barker. Counsel for plaintiff object that the evidence as to the credit was given on the cross-examination of Carney, and that the cross-examination was improper, but no such objection was made in the trial court, and therefore can not be urged here.

Before the trial commenced, and again at the close of the evidence, counsel for plaintiff moved the court to dismiss the cause, for the reason that there was a suit pending in equity, in which the Union National Bank of Chicago was complainant and L. L. Barth, the defendant here, was defendant, and which involved the same matters as the suit at law; which motions the court overruled, and the plaintiff, by his counsel, excepted. Sections 29 and 30 of the prac-

tice act sufficiently answer this exception. The former section permits claims and demands against the plaintiff to be pleaded as a set-off, and the latter provides that when so pleaded " the plaintiff shall not be permitted to dismiss his suit without the consent of the defendant."

The refusal of the court to hold as law certain propositions submitted by plaintiff, is assigned as error. We find no error in this regard.

The judgment will be affirmed.