Abraham Miller et al., Appellants, v. Alfred C. Stanley et al., Appellees.

Gen. No. 5,864.

1. BILLS AND NOTES, § 451*—*when defense that obligation was discharged by agreement with one of the payees sustained by the evidence.* In an action by the payees on a promissory note signed by several, where the note contained a condition that the note should be paid in railroad stock in case a certain railroad was constructed on or before the maturity of the note, and the railroad was not built within the time required by the condition, *held* that a defense by some of the signers, who were made defendants, that one of the payees on behalf of himself and the other payee agreed that the obligation on the note should be discharged if the defendants, who were directors of the railroad named in the condition, would furnish funds to complete the construction of the railroad, was sustained by the evidence.

2. BILLS AND NOTES, § 294*—*when obligation on note may be discharged by agreement with one joint payee.* Where a promissory note is signed by several persons and made payable to joint payees, the entire obligation thereon may be discharged by an agreement with one of the payees.

3. PLEADING, § 104*—*necessity of electing between inconsistent pleas.* A proposition of law to the effect that if there is a conflict between two special pleas the defense must elect which one they will rely on, *held* not to state the law in this State.

4. PLEADING, § 104*—*right to file inconsistent pleas.* The right to file inconsistent pleas has always been recognized in this State, except that a plea in bar to the entire declaration cannot be filed with a plea of tender.

Appeal from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed April 15, 1914.

H. H. WAITE and H. C. WARD, for appellants.

JACOB CANTLIN, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Abraham Miller and Edward Fehlman, payees in a note dated May 3, 1904, for the sum of $2,000, with interest at five per cent. per annum, and due two years after date, brought this suit against the seven signers of said note, and had service upon three only of said signers, namely, Alfred C. Stanley, Andrew S. Goodell and John Pippert. The note contained the following provision: "It is understood and agreed by and between the parties hereto that if the Dixon, Rock Falls and Southwestern Electric Railway is built to Hooppole, Henry County, Illinois, on or before the maturity of this note, the said sum, including interest, shall be paid in stock of said Dixon, Rock Falls and Southwestern Electric Railway Company at the rate of Eighty-five Dollars per share of stock, the par value of which shall be One Hundred Dollars." There was indorsed on said note two payments, one of $535, on July 23, 1907, and one of $500, on April 25, 1908. On the day of the trial in the court below there was due on said note $1,692.60, unless it had been discharged in the manner hereinafter stated. Special counts of the declaration averred that said condition was not performed and that the road was not built within the time agreed, and the proof so showed. The defendants who were served filed three pleas, the general issue and two amended special pleas, which were each quite lengthy. The substance of the second plea was that both plaintiffs were residents of the village of Hooppole, and owners of farm lands near there and heavy shippers of produce, and that Miller conducted a general store there, and that Hooppole was without railroad facilities, being ten or twelve miles from the nearest railroad points, to which places it would be necessary to haul overland by team all merchandise and deliver all grain and farm produce for market; and that to procure better shipping facilities, Miller, on behalf of himself and Fehlman, agreed with said defendants that in consideration that said defendants, being directors of the railroad company

named in said condition, would furnish funds towards the construction of a railroad from Tampico to Hooppole, and would, as such directors, and on behalf of said company, construct said railroad to Hooppole, and give Hooppole communication by rail with the market, the plaintiffs would cancel said note; and that said defendants did furnish funds and did construct said railroad from Tampico to Hooppole on or before September 1, 1910, and that said furnishing of funds and constructing said railroad was accepted by plaintiffs in full satisfaction of the promises made in said note, and in payment of all sums alleged to be due in the declaration and each count thereof. The third plea was in substance the same, except that it averred that by the performance by defendants of said agreement to construct said railroad, the said sums alleged to be due on said note were paid and settled in full, and that plaintiffs agreed that no demand should ever be made for said moneys, or any suit ever instituted therefor against the defendants or their co-defendants, but that they were thereby released from all further obligation on said note, and from all causes of action which plaintiffs then had against the defendants or either of them by reason of anything previous to that time. To the second plea, being the first special plea, said plaintiffs replied by denial that Miller made any such agreement with the defendants, and they denied that said defendants, in pursuance of any such agreement with Miller, furnished funds towards the construction of said railroad, and denied that the plaintiffs accepted any such action in satisfaction and discharge of the promises in the note sued on; and they filed a similar replication to the other special plea. Said defendants rejoined, averring that Miller did make such promise. Plaintiffs also replied to said special pleas the statute of frauds, to which defendants, instead of demurring, rejoined that said agreements were not such as were barred by the statute of frauds because not to be performed within one year.

A jury was waived, there was a trial and a finding and a judgment for defendants, from which judgment plaintiffs below prosecute this appeal.

It is held in *Lumberman's Ins. Co. v. Preble,* 50 Ill. 332, that one of several obligees may execute a valid release, by which the entire obligation will be discharged. In *Harding v. Parshall,* 56 Ill. 219, it is held that a payor or other obligor may pay either of several joint payees, and thereby become fully discharged. In *Lyman v. Gedney,* 114 Ill. 388, on p. 406, it is held that payment to one of two joint payees extinguishes the debt. In *Austin v. Hall,* 13 Johns. (N. Y.) 286, the headnote is as follows: "Where several plaintiffs must join in bringing a personal action, a release by one joint plaintiff is a bar to the action." In 3 Randolph on Commercial Paper, sec. 1446, it is stated that payment of a note may be made to either of several joint payees. We therefore conclude that appellees could settle this note with Miller.

Appellees, in support of their special pleas, proved by three witnesses that long after the maturity of this note and the entire violation of the condition above quoted therefrom, Miller applied to the defendants, who were directors of the railroad company, to be permitted to come in and be a director and an officer and assist in the construction of the road, and to have them put in more money so that it could be completed to Hooppole, and they told him that if they did take him in as a director and an officer, and did put more money in and complete the road to Hooppole, he would have to take care of this note, and that he replied that if they would put in money and get the road built to Hooppole he would take care of this note and the signers should never be pressed for it, and that the payees would never try to collect it. They further proved that they did then put in various large sums of money, amounting to much more than this note, and did make him a director and an officer of the road, and put into his hands the acceptance of each mile of the

road as it was built, and that he acted in those capacities. They also proved two other interviews with him before the completion of the road, in which they inquired about the note, and in which he told them that he would take care of the note and that defendants would not be bothered any more about it, and that they were not to be called upon to pay it, and that so long as there was a road to Hooppole the plaintiffs were satisfied, and that it made no difference what kind of a road it was; that what the payees of the note wanted was something to take the freight out and in, and they would be perfectly willing to have an engine to start with. They further proved that they did complete the road to Hooppole, and that afterwards they asked him about the note and he said it would be taken care of; that the note was already taken care of; that it was already settled, and that they need not worry about it. They also introduced a letter from Miller to one of the appellees, dated September 13, 1910, in which he said: ''We are into Hooppole, and feel quite good over the matter. We start from this end in the morning and meet the 9 A. M. train and meet the 4 P. M. and make two trips per day. You can ride to Hooppole now in case you come to Hooppole.'' They also proved by a fourth witness that he had several conversations with Miller during the time the road was being built from Tampico to Hooppole, in which Miller told him that if the road was built into Hooppole this note was not to be enforced, but it was to be satisfied thereby. Miller denied each and every one of these alleged conversations and of these alleged promises. He testified that while the road was being built he was urged by some of the signers to induce the persons interested in this note to wait for its payment until the road was completed to Hooppole, and that he promised that he would try and do so. It should be stated that while Miller and Fehlman are the sole payees of this note, yet the money for which it was given was not all owned by Miller and Fehlman, but that other citizens

of Hooppole, interested in securing railroad transportation from Hooppole to a railroad line, furnished part of the money for which the note was given, and these other persons were consulted at various times. The witnesses who testified to these promises and conversations with Miller do not state them in exactly the same way. They do not all absolutely agree either as to the precise time when the several conversations were had, or as to all the persons who were present, and these variations may be considered as weakening their testimony, or they may be considered as strengthening it. After this suit was begun, the payees and other parties interested and the defendants who were served with summons had a meeting looking towards a settlement, at which these three defendants offered to pay $700 in satisfaction of the note, and nothing was said in that interview to the effect that the note had been settled and discharged by building the road to Hooppole. The absence of any such declaration is entitled to be considered in its effect upon their testimony.

Nevertheless, it still remains that the defense set up by the appellees is sworn to by four witnesses and is contradicted by no one but Miller. The trial judge saw the witnesses and believed the appellees. It is impossible for us to demonstrate that he is wrong and should have believed Miller and disbelieved the other four.

Appellants contend that the road has not been built to Hooppole as contemplated by the alleged arrangement. It seems that it has in fact been built from Tampico, a railroad point, to Hooppole, and that engines do run over it, and that one of the parties interested, who is a grain buyer, does ship his grain out over it. It is evidently not well ballasted. Some of the land it runs over has not been secured for a right of way. A part of the way it runs in a public highway, by permission of the highway commissioners. Electricity has not been supplied as the motive power. The

name of the corporation under whose charter the road was built contains the word "Electric," but the corporation was organized under the railroad act, and its charter does not show that it was to use electrical power, and it is expressly shown that Miller, in his promises to appellees, told them that it made no difference if they did use engines, at least at first. The proof also shows that Miller accepted or treated the road as a compliance with the requirements made by him. There was no agreement that the road should be operated in any particular manner, nor that it should be kept up to any particular degree of efficiency, and it appears that it is used by shippers for the transfer of produce and merchandise between Hooppole and Tampico. We conclude that the court did not err in adjudging that the defense was established.

Plaintiffs offered eight propositions of law. The court refused the fifth and seventh and gave the others. The substance of the fifth was that if there was a conflict between the two special pleas the defense must elect which one they would rely upon. This is not the law in this State. The right to file inconsistent pleas has always been recognized in this State (*Barker v. Barth*, 88 Ill. App. 23; Heard's Civil Pleading, 205), except that a plea in bar of the entire declaration cannot be filed with a plea of tender. *Jo Daviess County v. Staples*, 108 Ill. App. 539; *O'Meara v. Cardiff Coal Co.*, 154 Ill. App. 321. The seventh proposition was to the effect that the negotiable character of this instrument is not affected by the condition written therein. This was wholly immaterial, as the instrument had not been negotiated.

The judgment is affirmed.

*Affirmed.*