H. R. Cox and A. B. Cox, Trading as Cox Jewelry Company, Appellees, v. Aetna Casualty and Surety Company of Hartford, Connecticut, Appellant.

Gen. No. 8,129.

Opinion filed October 13, 1930. Rehearing denied May 14, 1931.

JOHN E. CASSIDY and STAFFORD, SCHOEDE & STAFFORD, for appellant.

CONNELLY, WELD, WALKER & SEARLE and P. R. INGELSON, for appellees; FRANKLIN P. SEARLE, of counsel.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This is an appeal by the Aetna Casualty and Surety Company of Hartford, Connecticut, appellant, from a judgment in favor of H. R. Cox and A. B. Cox, copartners, doing business under the firm name and style of Cox Jewelry Company, appellees, for the sum of $25,041.67.

This cause was in this court at a former term and is reported in 248 Ill. App. 209, where the material facts in the case are to be found.

The action is one in assumpsit, based upon a policy insuring appellees against loss by robbery, between

the hours of 7 a. m. and 12 o'clock, midnight, the policy period extending from December 18, 1923, to December 18, 1924; the maximum liability of insurer, under the terms and provisions of the policy was $20,000. The alleged robbery is said to have occurred on December 21, 1923, between the hours of 11 p. m. and midnight, three days after the policy became effective.

The record discloses that when the case went to trial the pleadings consisted of appellees' declaration of one count, averring performance by them of all the conditions and terms of the policy to be performed precedent to a recovery; an affidavit of claim; the general issue; an affidavit of merits and special pleas.

A number of reasons are assigned and argued for a reversal of the judgment. It is urged that the robbery was a frame-up and that the judgment should be reversed with a finding of fact; that the trial court should have directed a verdict because there was no proof tending to show a compliance with section D of the policy. This section provides that the insured shall give immediate notice of loss to the home office of the company in Hartford, Connecticut, to the general agent and manager who countersigned the policy, and also to the company's local authorized agent. The proof shows that the insured gave notice to the local authorized agent but did not give notice to the home office or to the general agent who countersigned the policy.

The declaration does not aver a waiver. Appellant contends that it devolves upon appellees to prove a strict compliance with the terms and conditions of the policy; that the performance of the conditions is a material averment of the declaration, which the appellees must prove as a part of their case.

Appellees' reply is, that inasmuch as the defense was not set up in the defendant's affidavit of merits,

appellees are not required to prove a performance of those conditions; that appellant's failure to specify this defense in its affidavit of merits, has entirely eliminated this issue, as one of the issues to be tried in the case.

This question necessarily involves the construction of section 55 of the Practice Act, Cahill's St. ch. 110, ¶ 55. In this district, however, the rule has long since been determined.

In *Reddig v. Looney,* 208 Ill. App. 413, after referring to a number of authorities, relative to the question of practice, under said section of the Practice Act, at pages 419 and 420, the court, speaking through the late Justice Dibell, said, "The rule above stated will not result in trying cases on issues formed by an affidavit of claim and an affidavit of merits. Though actions at law in the circuit court are to be tried upon the pleadings, yet under this statute the parties are limited also by their affidavit. Plaintiff can prove and recover only what is stated in his affidavit of claim, but he cannot prove and recover even that, unless he has an appropriate declaration on that cause of action. Defendant can only prove such defense as is stated in his affidavit of merits, but he cannot prove that, or have a verdict upon that, unless he has a pleading appropriate to that defense. The proof and the verdict must be under proper pleadings, but no proof can be admitted or availed of under the pleadings unless it is supported by a proper affidavit."

In *Manufacturers State Bank of East Moline v. American Surety Co. of New York,* 230 Ill. App. 474, in discussing the question of practice under section 55 of the Practice Act, at page 482, we said, "Now that we have seen that the amendment of 1907 did not change the practice as it existed prior to that time, except to require the defendant to specifically set forth the defense he intended to rely upon, we must

inquire what was the practice prior to 1907, with respect to the duty of a plaintiff to prove the material averments in his declaration. At the time, when an affidavit of defense needed only to state that the defendant had a meritorious defense to the whole, or some specific portion of plaintiff's demand, the plaintiff was compelled to prove the material averments of his declaration. If his affidavit was so restricted that he could not make proof sufficient to support his declaration, he would fail in his suit. It was always necessary for him to prove his essential averments. There is nothing in section 55, as amended, which relieves him of that duty.''

In *McPherson v. Board of Education,* 235 Ill. App. 426, at page 429 we said, ''It is a well known rule of pleading that where the general issue is filed together with special pleas, the special pleas cannot be utilized as a waiver of some of the allegations of the declaration, even though the averments of the special pleas are inconsistent with the denial under the general issue. Under the general issue, every material allegation of the declaration must be proved as alleged, and if they are not proved, the party bringing the suit has not made out a cause of action. *Farnan v. Childs,* 66 Ill. 544; *Priest v. Dodsworth,* 235 Ill. 613; *Barker v. Barth,* 88 Ill. App. 23; *Miller v. Stanley,* 186 Ill. App. 340; *Bradley v. Illinois Automobile Ins. Exchange,* 227 Ill. App. 572. This was the rule prior to the passage of section 55, of the Practice Act (Cahill's Ill. St. ch. 110, ¶ 55), and it continued to be the rule after the passage of that statute, except in so far as it was changed by the statute. When appellee filed his declaration, accompanied by an affidavit stating the nature of his claim and the amount due, as provided in section 55 of the Practice Act, if appellant had filed no pleas and no affidavit of defense, appellee would have been entitled to judgment against appellant as in a case of default. But when the appellant filed the

general issue and a special plea, accompanied by an affidavit, stating the nature of his defense, a different rule was set in operation as far as appellee was concerned. Appellee was no longer entitled to judgment as in case of default, but it thereupon became his duty to prove every material allegation of his declaration, and if he failed to do so, he was not entitled to a judgment. This court so held in the recent case of *Manufacturers State Bank of East Moline v. American Surety Co. of New York,* 230 Ill. App. 474.''

According to the contention of appellees, a case would be tried in a cause in which an affidavit of claim had been filed by the plaintiff, and an affidavit of merits by the defendant, upon the issues made by the affidavits instead of by the pleadings.

We are of the opinion that the trial court erred in its ruling in holding that it was not incumbent, by reason of the state of the record, upon appellees, to prove the material allegations of the declaration in which a compliance with the provisions of the policy was averred. Moreover, it appears to us that the court should have allowed appellant to amend its affidavit of merits so as to require appellees to prove compliance with section D, or a waiver of such requirements.

The policy declared upon provides that there should be no liability unless books and accounts were kept by the assured, and the loss could be accurately determined therefrom by the company. It was charged in the declaration that books and accounts were kept up to and prior to the date of the robbery, by means of which said loss could be accurately determined by the appellant. In our former opinion we held that insurance companies have the right to require the one it insures to keep books and accounts, correctly detailing purchases, and showing sales, ready to be produced in the event of a loss. It is contended by appellant that appellees did not comply with the last above-

mentioned provision of its policy in making their proof, and that incompetent testimony was admitted on the part of appellees when they were endeavoring to make their proof to comply with the terms of the policy.

Referring to the proof of loss, the witness Herbst was asked whether it was an accurate determination of the loss. He was allowed to testify, over the objection of the appellant, that he made it up from books and records of the Cox Jewelry Company, and that it was such an accurate determination. The witness was then allowed to testify, in response to a question put to him, that the books and records of the Jewelry Company were kept and maintained in the usual and customary way in which retail merchants, including jewelers, kept their accounts. The witness then referred in detail to the various books of appellees and testified that ordinarily retail jewelers maintained their accounts in the same manner. Evidently Herbst was put on the stand as an expert witness in the line of business about which he was interrogated. The record discloses that he admitted on cross-examination that preceding his examination of the Cox Jewelry store records, in December, 1923, he had never before gone over or examined a set of books of a jewelry store.

In this connection the witness Riek was examined; she was asked, ''With your knowledge of the percentage of profit, and with the inventory that was taken in June, 1923, the invoices and with the record of the daily sales, including the notes, I will ask you, Mrs. Riek, whether by taking the inventory immediately after the robbery, you could have determined the amount of loss by that robbery?'' Over objection of the appellant she answered that she could. On cross-examination she testified that she had not seen the books of appellees for two or three months preceding the date of the loss, and she said ''Respecting what the

books show, my testimony is based entirely upon what Mr. Cox told me.''

We have read the testimony of H. R. Cox as to what books the Jewelry Company maintained. We are of the opinion that error was committed in the admission of testimony offered by appellees in an endeavor to prove the provisions of the policy, and the averments of the declaration that books and accounts were kept up to and prior to the date of the robbery, by means of which the said loss could be accurately determined by the appellant.

An important matter was presented by reason of the conduct of the juror Elmer Hallgren. The juror violated the instructions of the court. He went to the home of one Mabel Searight on two successive nights, when he was acting as a juror, and after the statements had been made by the respective counsel to the jury. Mabel Searight was the former wife of James Burns, the ''Santa Claus'' person appellant insists confederated with appellees in the alleged robbery. When the juror was examined before the court, among other things he said, ''I went back one evening. I do not recall whether it was the next night. On the first night there were others there besides myself, John Searight and his wife.'' He testified with reference to what was said about the case as follows: ''Upon leaving Mabel started the conversation about being called as a witness in the Cox case, and stated that if she had known this, she would not have been there, she would have left the State; she only wished she could have gone to Peoria.'' Upon my leaving she said, ''If I am called as a witness on this, it is going to cost the Insurance Company a whole lot more than it did the last time.'' ''I felt from what she said that she had been paid by the insurance company as a witness and she stated 'that if she was called again it would cost them plenty.' I probably spent an hour there that evening. The subject of the Cox case was

brought up not long before I left; probably 15 or 20 minutes, Mabel brought it up.'' It was not shown that the appellant was prejudiced by reason of the visit of the juror to the former wife of James Burns, but under the circumstances we are of the opinion the conduct of the juror was highly improper, and from what the records disclose upon this phase of the case, the court erred in refusing a new trial.

Appellant also insists that it was an error for the court to refuse the motion for a new trial on account of the conduct of H. R. Cox, one of the appellees, who was instrumental in having an article published in the Moline Dispatch. It appears that the jury were excused on the afternoon of February 21, 1929, until the following Monday morning, on account of Friday, the 22nd, being Washington's birthday and a holiday. On February 21, he wrote to the Moline Dispatch requesting that a certain communication be published, with assurance that if the newspaper did not wish to run it as a news item, he would pay for its publication. The publication refers to the witnesses of the appellant as safe blowers and crooks; that the evidence of the Insurance Company at the former trial was only given by the various witnesses in order to keep crooks out of jail and the penitentiary; that two former juries of unprejudiced men had vindicated appellees and established their honesty.

The paper in which the publication appeared, according to the editor thereof, had a circulation in Moline, Rock Island and other towns and cities in the county, in the neighborhood of ten thousand. The editor, upon receiving the statement from Cox, on February 21, published only the substance thereof. On the morning of February 22, Cox went to the editor and insisted that the article be published in full, and accordingly on the 22nd, it was published in full.

It is true affidavits were filed to show that the publication of February 22nd was not read by the jury, but we fail to find anything in the record to disclose that the publication of February 21st was not read by them.

It appears from affidavits filed in support of the motion for a new trial, the jurors indicated at the time the verdict was returned that they had read the publication in question. If they had, the duty of the court was plain. Cox evidently accomplished his purpose in prejudicing the jury.

There are other reasons assigned and argued but owing to the conclusion we have reached, we do not deem it necessary to discuss them.

We conclude that the judgment of the circuit court of Rock Island county should be reversed and the cause remanded, which is accordingly done.

*Reversed and remanded.*