# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

### GEORGIANA A. TERWILLIGER

*v.*

### THE NATIONAL MASONIC ACCIDENT ASSOCIATION.

*Opinion filed April 16, 1902—Rehearing denied June 6, 1902.*

1. PRACTICE—*effect where Appellate Court recites facts on reversing.* If the Appellate Court reverses a judgment without remanding, finding the facts differently from the trial court, and recites such facts in its judgment, nothing remains for the Supreme Court to do but to determine whether the Appellate Court properly applied the law to the facts.

2. INSURANCE—*contract will be construed, if possible, so as not to defeat the assured's claim to indemnity.* If a clause in an insurance contract is susceptible of two constructions, that one will be adopted which is most favorable to the assured, in order to indemnify him for the loss he has sustained.

3. SAME—*by-law construed as not barring recovery on accident policy.* A by-law exempting the insurer from liability if injury or death should result to the insured from "entering, leaving, or attempting to enter or leave, a moving conveyance using steam or electricity as motive power," does not apply where insured attempts to board a railroad train when it was standing still, but *continued* his attempt after it started, which led to his death.

*National Masonic Acc. Ass. v. Terwilliger,* 98 Ill. App. 237, reversed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. GEORGE W. BROWN, Judge, presiding.

A. B. ST. JOHN, and D. W. C. MERRIAM, for plaintiff in error.

HOLMES & SHIRRA, for defendant in error.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This suit was brought by Georgiana Terwilliger against the National Masonic Accident Association of DesMoines, Iowa, on a certificate of membership in said association, to recover the sum of $5000 on account of the death of her husband, Jeremiah M. Terwilliger, who is alleged to have been accidentally killed while the certificate was in full force, etc. Several pleas were interposed by the defendant company, upon which issue was joined and the case tried by jury. The verdict was for the plaintiff, fixing her damages at $5357.64, upon which the circuit court, after overruling the defendant's motion for a new trial, entered judgment. On appeal to the Appellate Court for the Second District that judgment was reversed without remanding the cause. The plaintiff below prosecutes this writ of error from the judgment of reversal.

The certificate which was offered in evidence provides for the payment of the sum of $5000 to the beneficiary of the insured "if a bodily injury, received while this certificate is in force, and directly caused by external, violent and accidental means, shall of itself alone, independent of all other causes, occasion the death of said member within ninety days from the date of said injury."

The following statement of the facts attending the death of the insured appears from the opinion of the Appellate Court:

"On the evening of May 16, 1898, the deceased, while returning from a Masonic lodge in company with a friend, Walter Chadband, attempted to board a suburban train of the Chicago and Northwestern Railway Company at Ravenswood station, to go to his home at Ravenswood Park. The railway had double tracks at that station, the south-bound train using the east track and the north-bound train the west track. There was a platform at each of the tracks, and the two were connected by a board walk crossing both tracks. Terwilliger and his companion entered the station ground on the east side, intending to take the train going north on the west track. They arrived at the station grounds just about the time the train was due. Chadband, who was the more active man, crossed the tracks to the platform on the west side, and as the train stopped got upon the rear platform of the rear car. He called to Terwilliger, who was on the east platform, 'Don't hurry; you have plenty of time.' Terwilliger did not reach the platform, which was on the west side of the car, but attempted to board the car from the east side thereof, where there was no station platform. He took hold of the hand-rails to raise himself into the car, and about the same time the train started. He did not release his grasp on the rails and Chadband attempted to assist him on to the train. After holding on for about two blocks Terwilliger relaxed his hold and fell to the track. His head struck the road-bed or rail and he was almost instantly killed."

It is admitted that the beneficiary certificate held by Terwilliger was in full force at the time of his death. It was, however, subject to certain conditions and provisions, as provided in the constitution and by-laws of the association, and it was insisted by the defendant, (which contention was sustained by the Appellate Court,) that under the conditions named in section 10 of the by-laws no recovery could be had. Other questions, such as that proper notice was not given of the death and proper

proofs thereof made within the time required by the rules of the association, were raised against the right of recovery in any event.   These objections were, however, decided against the defendant, and the reversal in the Appellate Court was based on the following finding of facts incorporated in its judgment:   "We find, from the evidence, that deceased reached the car and took hold of the hand-rails on the rear end of the rear car and attempted to enter it just before it started; that he was killed while and because of continuing his attempts to enter said car after it had started; that said car was propelled by steam, and that under section 10 of the by-laws of appellant, which were a part of the contract between Jeremiah M. Terwilliger, the deceased, and appellant, the latter was not liable to pay any benefits to the beneficiary by result of the death thus caused."

The by-law referred to in this finding of facts exempts the company from liability if injury or death to the insured should result from any one of a very large number of accidents named, among which is the following: "Entering, leaving, or attempting to enter or leave, a moving conveyance using steam or electricity as motive power." In fact, when the whole of this section of the by-laws is considered, it would seem that the certificate was an insurance which did not insure.   However, the contract between the parties, fairly and reasonably construed, must control, and it is well settled that where the Appellate Court reverses a judgment below, finding the facts differently from the trial court, and recites those facts in its judgment, nothing remains for this court to do but to determine whether that court properly applied the law to the facts.   *Coker* v. *Wabash Railroad Co.* 183 Ill. 223, and cases there cited.

It is a familiar and universal rule that "where the words in a contract of insurance are so framed as to leave room for construction, the courts are inclined to lean against that construction which will impair the in-

demnity of the insured. If the clause in a policy is susceptible of two interpretations, that one will be adopted which is most favorable to the assured, in order to indemnify him for the loss which he has sustained. In *Commercial Ins. Co.* v. *Robinson*, 64 Ill. 265, we said: 'Equivocal expressions in a policy of insurance, whereby it is sought to narrow the range of the obligations these companies profess to assume, are to be interpreted most strongly against the company.' (*Niagara Fire Ins. Co.* v. *Scammon*, 100 Ill. 644; *Schroeder* v. *Trade Ins. Co.* 109 id. 157.) 'The predominant intention of the parties in a contract of insurance is indemnity, and this intention is to ·be kept in view and favored in putting a construction upon the policy.' (1 Phillips on Insurance, sec. 124.) Hence, the contract is always to be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity. (*Healey* v. *Mutual Accident Ass.* 133 Ill. 556.) 'It is a rule of law, as well as of ethics, that when the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee.' (*Hoffman* v. *Ætna Ins. Co.* 32 N. Y. 413.) These rules of construction are applied to provisions and conditions in policies of insurance because such policies are prepared by the companies themselves, and the language in which they express their obligations and limit their liabilities is selected by them and not by the insured parties.—*Commercial Ins. Co.* v. *Robinson, supra; Webster* v. *Dwelling House Ins. Co.* 53 Ohio St. 558." *Forest City Ins. Co.* v. *Hardesty*, 182 Ill. 39.

The provision of the by-law here said to have been violated, is "entering, or attempting to enter," a moving conveyance, etc. It is not *continuing to attempt* to enter a moving conveyance. While this distinction may, upon first impression, seem hypercritical, yet when we apply to the by-law the foregoing rules of construction the distinction is a material and substantial one. According

to the finding of facts by the Appellate Court, when the deceased reached the train and attempted to enter the car it was not moving, and he in no way violated the condition of his certificate by making an effort to board the train. It started while he was lawfully making that effort. If he had released his hold from the hand-rails instantly upon the train starting and had been killed, the association would certainly have been liable. The finding of facts is that he was killed because he *continued* his attempts to enter the car after the train had started. A passenger may attempt to enter a car standing, with perfect propriety. A sudden and unexpected moving of it before he has succeeded in getting on may place him in jeopardy, and the question would then arise in his mind whether it would be safer to continue his effort or to abandon it, and in this instance, for anything appearing in the finding of facts, it may have seemed to a reasonable man less hazardous to continue the attempt to enter the moving car than to abandon such attempt.

In view of these considerations, what is the reasonable construction of the foregoing language of section 10? Manifestly, that the insured should not enter, leave, or attempt to enter or leave, a car after it was in motion, as such conduct is commonly understood, and to construe it to include "continuing to attempt" to get on, the first attempt being made before a train is in motion, would be to read into the by-law an important and material condition not therein expressed.

Our conclusion is that the Appellate Court misapplied the law to the facts as it found them to exist. Its judgment will accordingly be reversed and the judgment of the circuit court will be affirmed.

*Judgment reversed.*