(No. 16025.—Appellate Court reversed; circuit court affirmed.)
THE OLD COLONY LIFE INSURANCE COMPANY, Plaintiff in
Error, *vs.* HARRIET J. HICKMAN *et al.* Defendants in
Error.

*Opinion filed December 16, 1924—Rehearing denied Feb. 6, 1925.*

1. INSURANCE—*when waiver of prompt payment of premium is
a question of fact.* What facts will constitute a waiver of the
prompt payment of premiums is a matter of law but whether the
facts exist in any given case is a question of fact, and it is always
a question of fact whether a feeling of security on the part of the
insured is induced by the insurer in the matter of paying premiums
after expiration of the period of grace.

2. SAME—*waiver of forfeiture must be shown by the evidence.*
A waiver of the right to declare a forfeiture for failure to make
prompt payment of premiums must be shown by the evidence in
order to bar an insurance company from insisting upon a forfeiture
when a loss occurs.

3. SAME—*when evidence does not show waiver of prompt pay-
ment of premium.* Where the evidence shows that the insured had
always made prompt payment of premiums on a life insurance pol-
icy until the premium became due for which default was declared
by the insurance company and which was promptly returned when
tendered ten days after the expiration of the last day of grace,
and that the insured applied for re-instatement, which was denied
after medical examination, there is no showing of a waiver of the
right to declare a forfeiture or lapse of the policy for failure to
make prompt payment of the premium.

4. SAME—*rider must be construed with the policy.* A rider at-
tached to an insurance policy must be construed in connection with
the other provisions of the policy so as to effectuate the intention
of the parties.

5. SAME—*insurance policies are construed as contracts.* The
principles applicable to the interpretation and construction of in-
surance policies do not differ from those governing other contracts.

6. SAME—*written and printed parts of policy will be reconciled,
if possible.* Where the provisions of an insurance contract are
susceptible of two constructions the one more favorable to the in-
sured will be adopted, but it will not be assumed that the parties
intended to insert inconsistent provisions in their contract, and
where apparently inconsistent provisions of written and printed
portions of a policy can be reconciled by any reasonable construc-

tion, as by regarding one as a qualification of the other, such construction will be followed.

7. SAME—*when rider is not inconsistent with provision of policy in event of lapse.* The provision of a rider to a life insurance policy that none of the privileges of cash surrender, surplus or paid-up insurance shall be granted except by mutual consent, in writing, of the insured and his creditor, to whom the major portion of the policy was payable, is not inconsistent with a provision of the policy that in the event of a lapse in the payment of premiums paid-up insurance shall be automatically applied if no election is made by the insured within the period of grace, as the privileges of option are to be exercised during the life of the policy, and after the policy has lapsed and the insured has been denied re-instatement, paid-up insurance applies automatically and the beneficiary and the creditor cannot be given the privilege of extended insurance.

HEARD, J., took no part.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

McKINLEY & PRICE, and GILLESPIE & GILLESPIE, for plaintiff in error.

GEORGE M. MORGAN, and GEORGE W. KENNEY, for defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Richard T. Hickman about May 15, 1895, applied to the Knights of the Globe Mutual Benefit Association for a membership certificate in the sum of $3000, which was afterward changed to $2000. The name of the company was subsequently changed to Cosmopolitan Life Insurance Association, and a substituted certificate, also for $2000, was issued to Hickman. The company's contracts were assumed by the plaintiff in error in 1909, and a two-year convertible term policy was delivered to Hickman upon the surrender of the certificate he held. The exchange was

315—20

in accordance with the re-insurance agreement between the companies. On May 25, 1911, the plaintiff in error issued to Hickman its policy, to which was attached a typewritten rider which provided that upon proof of his death the company would pay to John A. Neu, a creditor, $1500, acknowledged by the insured to be due, and the remaining $500 to Harriet. J. Hickman, his wife. The policy provided how, when and where the premiums should be paid, and that upon their payment as required the policy would continue as a whole life policy so long as Hickman should live. One month of grace was allowed in the payment of premiums after the first year, subject to interest and the deduction of overdue premiums if death should occur during the period of grace. The policy contained provisions concerning policy values, loans, cash surrender value, paid up insurance and extended insurance. By a non-forfeiture provision the insured was, in the event of failure to pay premiums after the policy had been in force three years, entitled to the value of the policy as specified, subject to the provisions of the paragraph headed "Indebtedness," and might have the benefit, as if there had been no default, of the paragraphs concerning loans, cash surrender, paid-up insurance and extended insurance. If the election was not exercised by the insured within the period of grace the provision for paid-up insurance automatically applied and the company should be liable therefor on the basis stated in the table of policy values. The rider provided that none of the privileges of cash surrender, surplus or paid-up insurance should be granted except by the mutual consent, in writing, of the insured and the creditor, subject to the approval of the association.

Hickman paid his premiums quarterly in accordance with the privilege given him by the company. He failed to pay a premium due on February 25, 1918, within the month allowed for grace. The remittance does not appear to have been received at the general office of the plaintiff

in error until the 4th of April following. The check was returned to the creditor, Neu, from whom it had been received, with the announcement that the policy had lapsed. A blank application for re-instatement was enclosed, which Hickman filled out. Neu mailed it to the plaintiff in error. On the advice of its medical department, however, the plaintiff in error refused to re-instate Hickman. He died on January 28, 1921. Proofs of death were furnished, and Harriet J. Hickman, the widow, and Neu, the creditor, made claims for the respective sums shown by the face of the policy and the rider. The plaintiff in error acknowledged an indebtedness of $434.46 to whomsoever that sum might be adjudged payable, and it offered to pay the money into court, but it denied further liability. From the testimony it appears that $434.46 is the sum which would automatically become paid-up insurance upon a lapse of the policy under its non-forfeiture provisions after allowing proper deductions due plaintiff in error.

The widow and the creditor brought suits at common law to recover the sum of the policy without any forfeiture deductions. The plaintiff in error filed its bill in the nature of an interpleader, admitting the liability stated, and prayed that the actions at law be enjoined. To this bill the widow and Neu filed a joint answer and also a cross-bill, by which they asked a decree for the face of the policy, with interest. The cause was referred to a master in chancery, who made a report with his conclusions that the policy had lapsed, and that its paid-up value, less the required deductions, amounted to $434.46. The chancellor sustained the master's findings, dismissed the cross-bill and granted the relief sought by the bill. On appeal the Appellate Court reversed the circuit court's decree and remanded the cause to that court, with directions to dismiss the bill and to enter a decree on the cross-bill in favor of Harriet J. Hickman and John A. Neu for $1963.56 and interest, to be distributed between them on an accounting in the circuit

court. A petition for *certiorari* was allowed by this court, and the case is here for further review.

Plaintiff in error contends that it did not waive the prompt payment of premiums in accordance with the stipulations of the policy. Hickman adopted the plan which the company permitted of paying his premiums quarterly. It was the company's practice to enter the premiums received on a cash sheet. A tabulation of the several premiums paid by or on behalf of Hickman and of the dates of their payment was introduced in evidence by the plaintiff in error. Its accuracy was denied by the defendant in error Neu. From testimony offered by the plaintiff in error it appeared that when a letter was received by the company the enclosure was stamped with a time and date stamp and in the absence of an enclosure the envelope was stamped; that if a receipt was to be mailed for a premium paid it would be dated the day it was forwarded, and that such date was sometimes two or three days after the actual receipt of the premium. The tabulation of the premiums paid extends from 1910 through 1917. During that period payment was made only once after the period of grace had expired, the policy was treated as lapsed, and the company required that it be re-instated. On four occasions when the last day of grace fell on Sunday or a holiday Hickman was allowed the following day to pay the premium. The tabulation was compiled from the records of the plaintiff in error. Neu's testimony denying its accuracy was from memory. He had no written record to support his testimony. He states that receipts for premiums paid reached him after the expiration of the period of grace. In certain instances, judging from the dates on which he testified that he sent checks to pay premiums, the receipts mailed in return could not have shown the true dates of the premium payments. He produced none of the checks or receipts. That the premium which became due February 25, 1918, was sent to the company after the expiration of the

period of grace is not controverted. The post-mark of the Springfield post-office shows that fact, and the testimony is that it was received ten days after that period had expired. The company promptly declared the default and required an application for re-instatement of the policy. Such an application, which expressly recited that the policy had lapsed, was made by Hickman and transmitted to the company by Neu with an accompanying letter requesting re-instatement. Shortly afterward the application, on the advice of the company's medical department, was denied. Under a predecessor policy Hickman had defaulted in the payment of the premium due and its re-instatement had been required. He knew that he could not neglect the payment of premiums within the prescribed period with impunity. We fail to find any evidence that there was such indulgence, amounting to a course of conduct, as would induce Hickman to believe that his premiums might safely be paid after the expiration of the period of grace. It is always a question of fact whether a feeling of security on the part of the insured is induced by the insurer. What facts will constitute a waiver of the prompt payment of premiums is a matter of law, but whether the facts exist in any given case is a question of fact. (*Ætna Life Ins. Co.* v. *Sanford,* 200 Ill. 126.) It is only when such a waiver is shown by the evidence that the insurance company is not permitted to stand upon a forfeiture if a loss occurs. (*Phenix Ins. Co.* v. *Grove,* 215 Ill. 299; *Illinois Masons' Benevolent Society* v. *Baldwin,* 86 id. 479; 3 Cooley's Insurance Briefs, 2709.) We believe the evidence justified the finding of the master and the decree of the circuit court that the plaintiff in error had not waived the prompt payment of the premium due February 25, 1918, and that by reason of the failure to pay that premium within the period of grace the policy lapsed.

But the defendants in error argue that there is a conflict between the typewritten rider and the printed policy,

and that the rider must prevail and the insured and the creditor be given the privilege of extended insurance. The policy provided that if the election were not made by the insured within the period of grace the provision for paid-up insurance should be automatically applied. The rider provided that none of the privileges of cash surrender, surplus or paid-up insurance should be granted except by the mutual consent, in writing, of the insured and the creditor, subject to the approval of the association. The identical rider was attached to an earlier policy issued to Hickman by the predecessor of plaintiff in error. In that policy there was no provision for extended insurance. The policy here involved took the place of the former one. In the case of the policy which contained no provision for extended insurance the rider certainly could not be considered a request in writing to apply the extended insurance privilege. That the same rider was attached to the later policy does not evince an intention to make any such election. Nor does it follow that because of the presence of the rider the only option available was that of extended insurance. Without the rider Hickman had the right, while the policy continued in force, to modify, in accordance with its terms, the form of his insurance. The rider gave Neu, his creditor, a major interest in the policy. After it was attached, in order that Neu's rights might be safeguarded his assent to the exercise of any option granted by the policy was required. Hickman, however, retained a substantial interest in the policy. Hence both Hickman and Neu were interested in the payment of the premiums in order that the policy might continue in force for their protection. They were concerned that no voluntary act of one should operate to the disadvantage of the other. But the options granted by the policy were to be exercised only while it continued in force. No election could be made either by the insured under the policy alone, or by the insured and his creditor under the policy and the rider, after

the policy had lapsed. It was expressly stated in the policy that if no election had been made within the period of grace the provision for paid-up insurance should be automatically applied. When that period had expired the insured and his creditor had no option and could make no election, and their rights under the policy were definitely fixed by its express provision with reference to paid-up insurance. The rider must be construed in connection with the other provisions of the policy so as to effectuate the intention of the parties. The principles applicable to the interpretation and construction of insurance policies do not differ from those which govern other contracts. (*Cottingham* v. *Mutual Church Ins. Co.* 290 Ill. 26.) While it is a rule of law that if the provisions of an insurance contract are susceptible of two constructions the one more favorable to the insured will be adopted, (*Terwilliger* v. *Masonic Accident Ass'n,* 197 Ill. 9; *Lesher* v. *United States Fidelity Co.* 239 id. 502; *Monahan* v. *Fidelity Mutual Life Ins. Co.* 242 id. 488;) yet where the written and printed parts of an agreement may be reconciled by any reasonable construction, as by regarding one as a qualification of the other, that construction will be followed, because it cannot be assumed that the parties intended to insert inconsistent provisions in their contract. (6 R. C. L. 848; 13 Corpus Juris, 535.) On the facts shown in this record we are convinced that there is no real conflict between the rider and the policy. It was proper for the plaintiff in error to apply the provision for paid-up insurance, less the sums properly deductible, and by its bill it offers to pay such amount to whomsoever due.

The judgment of the Appellate Court will be reversed and the decree of the circuit court will be affirmed.

*Appellate Court reversed, circuit court affirmed.*

Mr. JUSTICE HEARD took no part in this decision.