(No. 20174.—

IKE KAPLAN *et al.* Defendants in Error, *vs.* THE UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff in Error.

*Opinion filed February 18, 1931.*

EUGENE P. KEALY, for plaintiff in error.

CHARLES RUDOLPH, and WINSTON, STRAWN & SHAW, (HAROLD BEACOM, THOMAS A. REYNOLDS, and ARTHUR D. WELTON, JR., of counsel,) for defendants in error.

Mr. JUSTICE ORR delivered the opinion of the court:

This case is here on writ of error to review a judgment of the circuit court of Cook county, where, in an action of assumpsit upon an insurance policy, the defendants in error (herein called plaintiffs) obtained a jury verdict and subsequent judgment for $6000 against plaintiff in error (herein called defendant). Upon appeal this judgment was affirmed by the Appellate Court.

The declaration recited the material terms of a $10,000 policy, by which defendant undertook to indemnify plaintiffs from loss on account of interior robbery. It alleges that the policy was taken out April 3, 1926, and that on the morning of August 31, 1926, the hold-up and robbery occurred, by which 52 fur coats and 147 dresses were taken from the Ladies Cloak and Dress Shop, operated by plaintiffs in Chicago. The record contains no suggestion of fraud or collusion in the accomplishment of the robbery.

About seven o'clock on the morning of the robbery Charles Pryor, a trusted employee of plaintiffs, was engaged in sweeping out their place of business before the hour of opening, as was his usual custom. He noticed a man dressed as a police officer standing at the front door with a paper box under his arm. During his several years of employment Pryor had been instructed to receive packages of returned garments and to collect money from those desiring to pay at a time when the other employees were not present. He therefore unlocked the front door and invited the apparent police officer in. Thereupon the stranger drew a gun and marched Pryor to the rear of the store, where he was forced to lie on the floor, his feet and hands bound. With the aid of confederates the fake officer then consummated the robbery.

Defendant sought to avoid liability on the policy by alleging that plaintiffs had failed to perform a condition designated by it as a promissory warranty. This condition was attached to the policy held by plaintiffs and contained a definition of "custodian," as follows: "Custodian, as used in this policy, shall mean (1) the assured if an individual; (2) a member of the firm if the assured is a co-partnership; (3) any officer of the assured if the assured is a corporation; (4) any person not less than seventeen nor more than sixty-five years of age who is in the regular employ of the assured and duly authorized by him to act as paymaster, messenger, cashier, clerk or sales person, and while so acting to have the care and custody of property covered hereby. In no event shall a watchman or a porter be considered a custodian."

It is contended by defendant that Charles Pryor was a porter, and that therefore he was not a custodian under the terms of this condition of the policy. Whether Pryor was a porter or not was one of the disputed facts when the cause was at issue before the jury. The record shows that he was called a handy-man or a general-man, and that he did

janitor work, delivered packages, made the firm's bank deposits, washed windows, collected money and washed and drove automobiles belonging to the members of the firm. He might have been properly called by any one of four or five different titles. Whether he was a porter or not was a disputed question of fact, and in such matters this court must be controlled by the verdict of the jury and the judgment of the trial court as affirmed by the Appellate Court. We cannot inquire as to the weight or preponderance of the evidence. (*Hinchliffe* v. *Wenig Teaming Co.* 274 Ill. 417; *Pienta* v. *Chicago City Railway Co.* 284 id. 246.) By the verdict of the jury, the judgment of the trial court and the affirmance of such judgment by the Appellate Court the status of Pryor as a proper custodian of the premises robbed has been fixed and such finding of fact is binding upon this court. There was therefore no breach of the condition by the plaintiff.

It is further claimed by defendant that plaintiffs cannot recover because after the policy was issued they put in a stock of fur coats, parts of which were included in the stolen property, while at the time the policy was issued a representative of the insurance company inspected the store and found that the goods did not consist in any part of furs. Defendant offered evidence tending to show that a similar policy covering furs would have required the payment of a premium four times larger than was paid by the plaintiffs. The court excluded this testimony, and it is urged not only the increase of the risk avoided the policy but that there was error in this ruling of the court. Again, we must say that the Appellate Court has reviewed the evidence on the points involved under this contention and has found that a clear preponderance of the evidence was against the defendant's position, that the word "merchandise" as used in the policy was broad enough to include fur coats, and that since defendant did not attach an indorsement to the policy excluding furs from the articles to be insured it

had failed to express any intention to exclude them from protection.

Several other defenses are made to preclude a recovery on the policy, including a claim that plaintiffs failed to comply with the condition inserted in the policy that books and accounts should be kept so that defendant could accurately determine the amount of the loss. Here, again, we find that the jury, the trial judge and the Appellate Court have found a preponderance of the evidence against defendant. In reviewing the evidence the Appellate Court found that as a matter of fact an accountant for defendant had examined the books kept by plaintiffs and found the value of goods lost to be only $100 less than the amount of plaintiffs' claim. Defendant does not contend that the judgment is excessive, and the trial court did not commit error in refusing an instruction relating to the books and accounts kept by the plaintiff.

By its assignment of errors defendant insists upon a strict construction of the conditions of its policy, but in construing policies of insurance the courts are inclined to lean against a narrow construction. (*Terwilliger* v. *Masonic Accident Ass'n*, 197 Ill. 9; *Monahan* v. *Fidelity Mutual Life Ins. Co.* 242 id. 488.) Equivocal expressions in a policy of insurance whereby it is sought to narrow the range of the obligations these companies profess to assume are to be interpreted most strongly against the company. (*Niagara Fire Ins. Co.* v. *Scammon,* 100 Ill. 644; *Schroeder* v. *Trade Ins. Co.* 109 id. 157.) The contract is always to be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity. *Healey* v. *Mutual Accident Ass'n,* 133 Ill. 556.

Finding no error in the record the judgment is affirmed.

*Judgment affirmed.*