Bankers State Bank, Appellee, v. New Jersey Fidelity & Plate Glass Insurance Company of Newark, New Jersey, Appellant.

### Gen. No. 34,904.

Opinion filed October 21, 1931.

PHILIP H. TREACY, for appellant.

JOHN A. BLOOMINGSTON and PHILIP WEINSTEIN, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

This was an action to recover on an insurance policy known as a burglar policy issued to the Savoy Ball Rooms, Inc., under which a loss occurred in the amount of $5,110.05, on the morning of November 13, 1928. The claim under the policy was subsequently assigned to the Banker's State Bank, plaintiff herein, as security for a loan negotiated by the Savoy Ball Rooms, Inc. The policy limited the loss to $7,500 and contained, among other things, a clause entitled, "Special protection to avoid 'Hold-up' is adopted as follows: 'Two Armed guards on duty at all times while said Policy is in force.' " The policy also contained a clause under the sub-head "Special Agreements," which read as follows:

"D. If the Assured is unable, because of some contingency beyond his control, to maintain any service or to perform any act specified in the Schedule, thus increasing the hazard, the liability of the Company shall be limited to such proportion of the insurance provided in the Policy as the premium paid would have purchased for such increased hazard under the Company's published Manual of Rates in force at the time of the issue of this Policy."

The premium paid for the policy was $516.90. Evidence was introduced on behalf of the plaintiff, showing that the premium paid for the policy in question was more than sufficient under the regular manual of rates, to cover the loss without the "Armed Guard" clause in the policy. This evidence was admitted for the purpose of permitting the insured to come within the contingency clause of the policy in the event the "Armed Guards" were not present at the time of the burglary or the insured was unable to maintain the service. The policy also provided that the defendant company would not be liable for any loss "unless

effected by forcible, violent and felonious means during the hours beginning at 7 a. m. and ending at 4 a. m. and only when the premises were open for business.''

From the facts it appears that the Savoy Ball Rooms, Inc. was held up by three men at about 10 o'clock on the morning of November 13, 1928. There were present on the premises at the time William Steward, the fireman, Charles Scott, Frank Miller and E. C. Hall, who were janitors and general utility men about the premises, together with Miss Eunice Smith, stenographer and secretary to the president of the company. While the hold-up was going on Faggen, the president of the company, entered the premises and he was ordered to open the safe and the inner vault contained therein. The money which was taken, and for which this suit was brought, was in this safe, which had been provided in conformity with the terms of the policy.

It is unquestioned that the amount found by the trial court was taken in the hold-up, but, upon demand by the insured, payment was refused on the ground that the Savoy Ball Rooms, Inc. had failed to provide two Armed Guards, as required by the terms of the policy. To meet this position of the defendant, plaintiff introduced evidence to the effect that Matthews was the night watchman and chief janitor and was armed and that two others, Chilton and Hodges, carried guns. Chilton was the general manager and Hodges was the advertising manager. Matthews carried a gun in a holster. There were always two guns on the premises for use, if needed. Matthews also had an assistant by the name of Hall and when Matthews was not on the premises he would tell Hall where the guns were kept.

Faggen, the president, over objection testified that his instructions to Matthews and his assistant, who were supposed to perform the duties of Armed Guards,

were to guard the place from closing time until opening time the next morning.

Matthews on the morning in question left at 9 o'clock, leaving Miller, Hall, Scott and Steward in the place. The force had been working until 5 o'clock in the morning, but Chilton, Cross and Faggen overslept and did not go on duty at 9 o'clock, as was required. Hall, the assistant to Matthews, was on duty, however, at the time.

Plaintiff insists that there is sufficient evidence to support the contention that "Armed Guards" were provided, as required by the terms of the policy and that, even though they were not on the premises at the time of the hold-up, nevertheless, the insured had fully performed the terms of the policy and was, in any event, covered by the terms of the contingency clause which provided that if the Armed Guards were not present at the time of the burglary or hold-up, the amount of the recovery could only be that amount which would have been recoverable under a premium which would have been required in the absence of this special clause.

Defendant insists that it is not liable, (a) because of the failure of the insured to maintain Armed Guards; (b) the hold-up took place when the premises were not open for business; (c) that the plaintiff's declaration charged that the insured had fully performed when, in fact, it had not; (d) that the trial court erred in admitting evidence as to the regular manual rates; and (e) that the trial court erred in admitting certain evidence. as to the facts and circumstances surrounding the issuance of the policy.

As to the first of these contentions, we are of the opinion that there is ample evidence to support the contention of plaintiff that Armed Guards were supplied and, furthermore, we are of the opinion that, even though they may not have been present at the

time of the hold-up, nevertheless, the insured was covered by the contingency clause in the policy and that, for the purpose of proving under this contingency clause, testimony was admissible as to the regular manual of rates. Under this evidence as to manual rates, it is apparent that the premium charged was amply sufficient, even in the absence of Armed Guards, to cover the loss under the policy. Both the questions, as to whether the insured complied with the provisions of the policy with regard to maintaining Armed Guards and as to whether or not the loss came under the contingency clause, were questions of fact for the trial court and the jury. Whether certain employees were designated as "porters" or otherwise, would not prevent their being used for the purpose of protecting the property, and there appears to be ample evidence in the record to the effect that they were instructed to use arms, if necessary, and were provided with guns for the purpose of protecting the property of the insured. *Fee v. Zurich General A. & L. Ins. Co.*, 257 Ill. App. 227; *Kaplan v. United States Fidelity & Guaranty Co.*, 343 Ill. 44.

The Supreme Court in the case of *Kaplan v. United States Fidelity & Guaranty Co., supra,* in its opinion, says:

"By its assignment of errors defendant insists upon a strict construction of the conditions of its policy, but in construing policies of insurance the courts are inclined to lean against a narrow construction. (*Terwilliger v. Masonic Accident Ass'n,* 197 Ill. 9; *Monahan v. Fidelity Mutual Life Ins. Co.,* 242 id. 488.) Equivocal expressions in a policy of insurance whereby it is sought to narrow the range of the obligations these companies profess to assume are to be interpreted most strongly against the company. (*Niagara Fire Ins. Co. v. Scammon,* 100 Ill. 644; *Schroeder v. Trade Ins. Co.,* 109 id. 157.) The contract is always to be liberally construed in favor of the insured, so as

not to defeat, without a plain necessity, his claim to the indemnity. *Healey v. Mutual Accident Ass'n,* 133 Ill. 556.''

Defendant sought to introduce evidence showing that at the time the policy was written, the risk was a dangerous one and had been rejected by other insurance companies and that the rate was based upon the fact that it was a dangerous risk because of the location of the premises. The premises in question were located at 4733–37 South Parkway, Chicago, Illinois. We are of the opinion that the court correctly ruled out this proffered testimony. The policy speaks for itself and the terms written therein constitute the agreement of the parties. It should not be varied by parol evidence. The jury found the issue in favor of the plaintiff and assessed its damages at the sum of $5,593.13, upon which verdict judgment was entered and we see no reason for disturbing the judgment.

For the reasons stated in this opinion the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and FRIEND, J., concur.