DETERMINED IN THE

# FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1910.

John Beaird, Jr., Appellee, v. New Jersey Plate Glass Company, Appellant.

1. INSURANCE—*what will not defeat recovery under burglary policy.* While the manner of keeping accounts may be crude and informal, yet if the statements therein contained are accurate and will show the amount of money actually kept in a safe and from them a loss occasioned by burglary ascertained, a provision of the policy insuring against a loss by burglary is complied with which is to the effect that the company shall not be liable if the accounts of the assured are not so kept that the actual loss might be determined therefrom.

2. INSURANCE—*what not covered by burglary policy.* A policy insuring against loss by burglary which covers money in current use in the business of the insured, does not by reasonable construction include or refer to money derived by the insured from gambling transactions.

Assumpsit. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the March term, 1910. Reversed and remanded. Opinion filed August 5, 1910.

BARCLAY, FAUNTLEROY & CULLEN and D. J. SULLIVAN, for appellant.

WISE, KEEFE & WHEELER, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellee to recover $2,000 on a casualty insurance policy issued by appellant, on account of the loss of certain moneys amounting to more than the sum named, alleged to have been feloniously abstracted from his safe in East St. Louis, Illinois, on January 2, 1909. There were two counts in the declaration. The first charged that on October 19, 1908, appellant issued a policy of burglary insurance to appellee, to indemnify him, to the amount of $2,000, for all loss of money, in current use, in consequence of the felonious abstraction of the same from a certain safe, located in the office or store room occupied by appellee, by entry therein by the use of tools or explosives directly thereon, for the term of one year; that afterwards entry was made into the safe by the use of tools or explosives directly thereon by some person or persons, who feloniously abstracted therefrom the sum of $2,582.25, which belonged to appellee and was in current use. The second count set out the policy in *haec verba,* including certain special agreements to a schedule attached thereto. These agreements provided, among other things, that appellant should not be liable for the loss of money unless it belonged solely to the assured nor unless such money should have been feloniously abstracted from the burglar proof part of the safe, after entry therein had been gained by the use of tools or explosives, directly upon said burglar proof part as well as upon the fire proof part of said safe; that there could be no recovery if the accounts of the assured were not so kept that the actual loss might be determined therefrom; that the term burglar proof as applied in the policy to the safe or part of the safe, should be understood to mean such a safe or such part of the safe, as was constructed of steel and was designed by the safe manufacturers to furnish protection against burglars and by them styled "burglar proof." In the schedule included in the policy the business carried on on the premises of appellee, is stated to be "saloon" and the insurance is said to attach in the amount of $2,000 to money, negotiable securities and un-

canceled United States Government post office and revenue stamps in current use in burglar proof safe or in burglar proof part of fire and burglar proof safe.

Appellant filed a plea of the general issue and also a special plea, alleging noncompliance on the part of appellee with that provision of the policy which provided that there could be no recovery if the accounts of the assured were not so kept that the actual loss might be accurately determined therefrom. Appellee replied double; the first replication stating that the omission to keep books was not done for the purpose of defrauding the defendant and the second that appellee's business was a cash business which did not require any books to be kept; that what he received was paid him in cash daily and there was no necessity or object in keeping accounts and books.

The trial resulted in a verdict and judgment for $2000, the amount of the policy, for appellee.

The proof showed that appellee was a partner with Alex Smith in the saloon business, conducted in a room located on Broadway in East St. Louis. The business was carried on under the name of Alex Smith & Company, but appellee claimed that he guaranteed everything and saw that everything was paid and by some arrangement with Smith, he was entitled to all the income from the business. The safe in question stood in the front of the room occupied by the saloon, between two doors. In the back part of the room was a door leading into another room which was used by appellee as a gambling room, where he had in his employ two or more men engaged in conducting games of chance on a per cent. According to his testimony it appeared that the daily receipts of the saloon business were put in an envelope and then placed in the safe; that he and his partner kept a sheet of foolscap paper on which they marked down every day what the saloon received and this was also placed in the safe; that on the night before the burglary is claimed to have taken place, money amounting to something over $600 was put in an envelope and this sum, together with the memorandum on the foolscap paper, was taken from the safe; that the amounts taken in at

the gambling room on the same night were placed in two boxes, one of which contained $738.75 and the other $1089, these sums apparently representing the amounts taken in respectively by two different men in appellee's employ. At about 2 o'clock the next morning Smith who with his family lived over the saloon, locked the saloon doors and went up stairs. He claims to have heard no sound in the saloon during the night, but in the morning when the saloon doors were opened, it was found that the safe had been broken into. The envelope in which the saloon money was kept was found on the saloon floor and its contents were gone. The tin boxes in which the gaming money was kept, were afterwards found across the street, empty. There was evidence tending to show that both safe doors had been forced open by violence, tools and probably explosives having been used.

Appellant contends that several of the conditions of the policy above referred to were broken or not complied with, and that, therefore, appellee was not entitled to recover, but the only claimed breach of condition sought to be taken advantage of by appellant by special pleas, is that which states that the company should not be liable if the accounts of the assured were not so kept that the actual loss might be determined therefrom. It appears that appellee and his partner kept a little book showing the amount of money received from the gambling room and contained in the boxes at the close of each day, and also a sheet of paper, upon which was marked down the amount of the saloon receipts for each day, which was placed in an envelope, both of which appear to have been in the safe and were lost at the time the money was taken.

While the manner of keeping the accounts was rather crude and informal, yet if the statements contained therein were accurate they would show the amounts actually in the safe and from them the loss might be correctly determined. We would not therefore feel justified in holding that there was such a failure to comply with that requirement of the policy as to justify us in setting aside the judgment on that account. There is however a reason why this judgment should not be

permitted to stand. The schedule included in the policy stated that appellee was in the saloon business. The policy only undertook to indemnify him for *all loss of money in current use* placed in the safe. In his declaration he states that by the terms of the policy appellant agreed that "it would indemnify the plaintiff for all loss of money *in current use* in consequence of the felonious abstraction of the same during the day or night, from the safe or safes, by the entry therein by use of tools," etc. As appellee was described in the policy as being engaged in the saloon business, it must have been contemplated by both parties that the "money in current use" referred to, must have been money used in the saloon business. Had appellee been also engaged in the banking business, receiving the deposits of his customers, it cannot be contended that if such deposits were placed in the saloon safe and the safe was afterwards burglarized and such moneys taken therefrom, appellee could recover upon this policy of insurance. The greater portion of the money placed in the safe and claimed to have been lost by the burglary, was money derived by appellee from the profits of his gambling room. The gambling was carried on in a separate room and its transactions were wholly distinct from the operation of the saloon.

We are therefore of opinion that the *money in current use* referred to in the policy, means only the money in current use in appellee's business as described in the policy, which was the saloon business and could not by any reasonable construction be said to include or refer to money derived by appellee from his gambling transactions.

The judgment of the court below was therefore erroneous and the same will be reversed and the cause remanded.

*Reversed and remanded.*