Ike Kaplan and Herman Kaplan, Trading as Kaplan Brothers, Appellees, v. United States Fidelity and Guaranty Company, Appellant.

Gen. No. 33,589.

McSurely, P. J., dissenting.

Opinion filed January 6, 1930.   Rehearing denied January 20, 1930.

Eugene P. Kealy, for appellant.

Charles Rudolph and Winston, Strawn & Shaw, for appellees; Harold Beacom, Thomas A. Reynolds and Arthur D. Welton, Jr., of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This appeal is by the defendant insurance company from a judgment in the sum of $6,000 entered upon the verdict of a jury. The action was in assumpsit upon an insurance policy issued on April 3, 1926, whereby defendant undertook to indemnify plaintiffs from loss on account of interior robbery.

The declaration recited the material terms of the policy and averred a loss at plaintiff's store on August 31, 1926.

Defendant pleaded the general issue and by a special plea averred that there was a breach of a promissory warranty of the policy which provided that one or more custodians (as therein defined) should be on duty on the premises during the hours specified in the policy; a further breach of the policy was averred to be that the business of plaintiffs at delivery of the policy was that of conducting a ladies' cloak and dress shop in which no fur goods were kept in stock, whereas at the time of the loss a part of the stock consisted of fur garments, which, it was averred, materially changed the risk; further that there was a breach of the promise in the policy that plaintiff's would keep books and accounts in such a manner that the amount of the loss could be accurately determined by the company.

Defendant made a motion at the close of all the evidence that the jury should be instructed to find in its favor, which motion was denied, and it is urged that this motion should have been granted because of the breach of these several promissory warranties. It is also urged that the court erred in refusing to give an instruction relating to the books and accounts to be kept by the plaintiffs.

The policy provides that certain declarations numbered 1 to 18 contained therein "are declared by the

Assured to be true," and that the policy is issued in consideration thereof and the payment of the premium. Among these declarations were those to the effect that the property insured under the indemnity paragraph is "money, merchandise and securities" and that "the Assured's business is Ladies' Cloak & Dress Shop." Another section of the policy provides that this insurance is "on property specified . . . while at least one or more custodian (s) are on duty therein." The policy also provides:

"Custodian, as used in this policy shall mean: (1) The assured if an individual; (2) a member of the firm if the assured is a copartnership; (3) any officer of the assured, if the assured is a corporation; (4) any person not less than seventeen nor more than sixty-five years of age, who is in the regular employ of the assured and duly authorized by him to act as paymaster, messenger, cashier, clerk or sales person, and while so acting to have the care and custody of property covered hereby. In no event shall a watchman or a porter be considered a custodian."

The only employee of plaintiffs in the store at the time of the robbery was one Charles Pryor. The contention of defendant is that the duties of Pryor were such that he must be held to be a watchman or porter and therefore could not be considered a custodian within the meaning of the terms of the policy.

The store of plaintiffs was located at the southwest corner of South Halsted and 64th Streets and was known as No. 6400 South Halsted Street. The building was a two-story brick extending all the way back to the alley, the main entrance fronting on Halsted Street. There were large glass show windows on each side of the front and the building was set back from the building line about 15 feet and extended back to the alley. The only doorway in the rear of the store led out into the alley.

Plaintiffs occupied the first floor of these premises.

The second floor was occupied by a nephew, Irving Kaplan, who conducted a millinery business. The entrance to the second floor was by an elevator leading down to the first floor salesroom.

Charles Pryor, a colored man, had been in the employ of plaintiffs some eight or ten years; he carried a key to the front door of the premises, and on the morning of August 31, 1926, arrived at the store about 6: 30 a. m., according to his custom. It was his duty to take care of the store, look after C. O. D. orders, receive the money for these and deposit it in the bank for plaintiffs. His first duty in the morning was to clean up the store, which usually took two or three hours. He was usually the first one at the store in the morning, opened it and made it ready for business. If customers came in he received them and they waited until the owners' arrived. He received packages as ordered by plaintiffs and signed up for them. He delivered merchandise and collected money on it. He says that he was usually out in the afternoon making these deliveries and collecting money on C. O. D. packages, which he then deposited in the bank.

On this particular morning Pryor went into the store and first signed out the watchman on duty; after he did that he locked the front door and proceeded to do his work, cleaning up the store and getting things ready for business. A man came to the front door dressed as a policeman; he carried a big box and Pryor greeted him with a smile; he expected the supposed policeman to hand the box to him, but instead a gun was placed over his heart; he was directed to keep his hands in the air and was marched to the back of the room; he was laid down with his face to the stones and his hands and feet were tied, and he says that was the last he knew of what was going on that morning.

It is contended that Pryor was not a custodian as defined by the terms of the policy; that he could be considered only as a watchman or porter, which are

expressly excluded from custodian as defined in the policy. It is also urged that at the time the robbery occurred Pryor was in the performance of duties such as would pertain to the employment of a porter, and that the phrase in the definition "and while so acting" means that any employee authorized to act in any of the capacities enumerated must be actually doing some work in that capacity at the time the loss occurs, before the policy can become effective. The second division of this court had occasion to consider a question substantially similar in *Holland v. Royal Indemnity Co.*, 245 Ill. App. 614. In that case it appeared that the employee whose qualifications as a custodian were challenged performed services such as delivering merchandise during part of the time, while at other times most of his duties consisted of work which would ordinarily be performed by a janitor, such as taking charge of the furnace, washing windows, cleaning and sweeping the store. In his absence salesmen put coal in the furnace. He was sometimes permitted to sell a radio battery but was not permitted to answer the telephone. It was there urged, as here, that if the employee could be considered as a custodian at all, it could be only while performing his duties as messenger and while having the insured property in his actual care and custody; and as he performed services of a messenger outside the store he could not be regarded as a custodian of property inside the premises. The court there said:

"Inasmuch as his messenger service would begin while he was in the store we apprehend that while there he would come within the definition of a custodian. We construe paragraph 1 (e), above quoted, to include as custodian anyone within the premises at the time of the robbery who may be called upon while there to act in any of the capacities enumerated in said paragraph, and that it is immaterial that he may be also

called upon to perform other services not strictly within the duties of his position, if present to perform the services required of him therein.''

It is true, as defendant urges, that the policy in that case, unlike the one here sued on, did not specifically exclude porters or watchmen from the class which might be considered as custodians. It is not contended here that Pryor was a watchman, but it is urged that the services performed by him were such as to make the term ''porter'' applicable to him.

The term ''porter'' literally means a doorkeeper or one who is in charge of a door or a gate. In the development of our language it has come at times to have a broader meaning, as, for instance, an attendant in a sleeping or parlor car who makes up the berth and waits upon the passengers. At other times it refers to one who carries burdens or luggage for hire, as at hotels or at railway stations.

The purpose of this provision in the contract is without doubt to secure the presence of persons of certain degrees of intelligence and capacity to care for insured property and (perhaps most important of all) persons whose character and reputation are such that the employer would trust them with important matters.

It must be held, we think, that the question of whether Pryor's duties were such as to bring him within the classification of a custodian according to the meaning of the policy was for the jury, and if so we cannot disagree with the finding of the jury on this point. Defendant cites *Pogue Co. v. Fidelity & Casualty Co. of New York*, 299 Fed. 243, and *Axe v. Fidelity & Casualty Co. of New York*, 239 Pa. 569; but the facts in those cases are not at all similar to those appearing here.

It is urged that the provision of the contract with reference to the presence of a custodian was a promissory warranty and should be considered as a warranty

rather than a representation, and that therefore it was necessary that the warranty should be literally fulfilled; that the contract of insurance would be invalid if there was a departure from the terms of the warranty in the slightest particular.

We do not understand that rule to be applicable to promissory warranties such as those considered here, but on the contrary we hold that such are in the nature of conditions subsequent and that substantial compliance therewith is sufficient. Cooley, Briefs on Insurance, vol. 2, p. 486; *Cady v. Imperial Insurance Co.*, 4 Fed. Cas. 984; *Lewitz v. United States Fidelity & Guaranty Co.*, 227 Ill. App. 612; *Peoples Fire Ins. Co. v. Pulver*, 127 Ill. 246, 249.

It is also urged that plaintiffs cannot recover because after the policy was issued they put in a stock of fur clothing, which was a part of the goods lost and for which they now seek to recover. The goods in question were 52 fur coats and 147 dresses.

Defendant produced evidence tending to show that a representative of the insurance company inspected the store of plaintiffs prior to the time the policy was issued; that he found at that time that their goods did not consist in any part of furs. Defendant further offered evidence tending to show that a similar policy covering furs would have required the payment of a premium 400 per cent larger than defendant received. The court excluded this testimony, and it is urged not only that the increase of the risk avoided the policy but that there was error in this ruling of the court.

A preponderance of the evidence we think showed that a ''ladies cloak and dress shop'' is accustomed to carry fur coats as a part of its stock in trade, and we think it is exceedingly doubtful under the language of the contract in evidence whether it would have been permissible for defendant to show the contrary.

The cases cited by defendant as to the avoidance of the policy by changes in the nature of the business

which increased the risk, construe policies (unlike this one) containing clauses providing for an avoidance of the policy under such condition. *Traders' Ins. Co. v. Catlin,* 163 Ill. 256, as also a number of cases cited from other jurisdictions, are therefore not in point.

The policy stated the nature of the business that was carried on and described the property insured in connection therewith as "money, merchandise and securities. The word "merchandise" would seem to be broad enough to include fur coats, and the contract, which was prepared and submitted by defendant, it would seem, would have expressly excluded fur coats if it had been the intention so to do. The court did not err in refusing the peremptory instruction requested on the ground that the risk had been increased, nor in excluding offered evidence tending to show that a business conducted as a fur business would have called for a higher premium rate. There is evidence tending to show that defendant used a form of indorsement excluding furs from the articles to be insured where that was the intention. This form of indorsement was not attached to this policy.

It is further urged that plaintiff's cannot recover because of failure to comply with a condition inserted in the policy that books and accounts should be kept by the insured in such manner that the defendant could accurately determine therefrom the amount of the loss. This defense appears to be an afterthought, since in a written communication denying its liability to plaintiffs prior to the commencement of suit the point was not urged. The argument of defendant on this point proceeds upon the theory that this condition constituted a warranty rather than a representation, and that the slightest deviation therefrom would prevent a recovery. This is not the law, as appears from the cases already cited. As was stated by the Supreme Court of Minnesota in *Olson v. Great Eastern Casualty Co.,* 149 Minn. 353, it is sufficient compliance with

a provision of this sort "if the books were kept in such manner that, with the assistance of those who kept them or understood the system on which they were kept, the amount of purchases and sales could be ascertained and cash transactions distinguished from those on credits, although it might be slow and difficult to do this." That the contention is without merit here would appear from the fact that the accountant for defendant who examined the books kept by plaintiffs found the value of goods lost only $100 less than the amount of plaintiffs' claim.

The burden of proof was upon defendant in this respect (*Benes v. Bankers' Life Ins. Co.*, 282 Ill. 236), and the proof submitted was not sufficient to sustain the allegation of the plea. The purpose of this provision is to protect the defendant from excessive claims, and as there was practically no difference between the parties as to the amount of damages, the point is without merit. *Israelstam v. United States Casualty Co.*, 201 Ill. App. 512; *Tucker v. American Bonding & Casualty Co.*, 223 Ill. App. 266; *Leiman v. Metropolitan Surety Co.*, 111 N. Y. S. 536. Defendant does not contend that the judgment is excessive.

For the reasons already stated the court did not err in refusing an instruction upon this point which was requested by defendant.

There is no substantial error in the record, and the judgment of the trial court is therefore affirmed.

*Affirmed.*

McSURELY, P. J., dissents.

O'CONNOR, J., concurs.