H. R. Cox and A. B. Cox, Trading as Cox Jewelry Company, Appellants, v. The Aetna Casualty and Surety Company of Hartford, Connecticut, Appellee.

Gen. No. 8,916.

Opinion filed September 24, 1936.

CONNELLY, WALKER, SEARLE & HUBBARD, PETER R. INGELSON and CHALMERS K. SEYMOUR, all of Moline, for appellants; WM. M. WALKER and FRANKLIN P. SEARLE, of counsel.

CASSIDY & KNOBLOCK and STAFFORD & SCHOEDE, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

A robbery insurance policy, effective December 18, 1923, issued by the appellee to appellants forms the basis of this action. The declaration set forth the policy *in haec verba* and alleged that while it was in full force and effect the premises of the assured were entered by a person unknown to the plaintiffs who perpetrated a robbery of merchandise belonging to the insured. It was further alleged that the plaintiffs, upon suffering the loss, gave immediate notice thereof

to the home office of the defendant in Hartford, Connecticut, and to the agent of the defendant who countersigned the policy, and that claim for loss arising under the policy was forthwith made in writing, duly subscribed by the assured and certified to in the manner required by the proof of loss form in use by the company and that said proof of loss was duly delivered to the company by the plaintiffs. The declaration further averred that books of account were kept prior and up to the date of the robbery, by means of which the loss could accurately be determined by the defendant. The declaration then averred full and complete performance of these several requirements by the plaintiffs and further alleged that the value of the merchandise which they lost by said robbery was $30,000.

To this declaration the defendant filed a plea of the general issue and four special pleas. The first special plea averred that the assured did not keep books of account from which the loss could be accurately determined by the defendant. The second special plea averred that the robbery was not established by reasonable evidence. The third special plea averred that the property claimed to have been stolen did not belong to the assured or was not held by the assured in a capacity that would render the assured legally liable to the owner in the event of loss. The fourth special plea averred that there was not a partnership between H. R. Cox and A. B. Cox, but that A. B. Cox traded alone. An additional plea was later filed which averred that the robbery was the result of a conspiracy between H. R. Cox, one of the plaintiffs, and James Hruska to defraud the defendant. Another additional plea averred that Ben Cox was an associate in interest and that he entered into a conspiracy with H. R. Cox and James Hruska to defraud the defendant company. After the issues were made up, a trial was had resulting in a judgment in favor of the plaintiffs for

$22,383.71. This judgment was later reversed by this court and the cause remanded for a new trial. *Cox v. Aetna Casualty & Surety Co.*, 248 Ill. App. 209. Upon the case being again tried in the circuit court, the plaintiffs recovered a judgment for $25,041.67, which this court again reversed and again remanded the cause. *Cox v. Aetna Casualty & Surety Co.*, 261 Ill. App. 394. Upon the third trial, the court at the conclusion of the evidence on the part of the plaintiffs directed a verdict for the defendant and upon that verdict judgment was rendered and the record is again brought to this court for review by appeal.

Section D of the policy sued on required appellants, upon discovery of any loss for which claim is made, to give immediate notice thereof to the home office of the company in Hartford, Connecticut, or to the general agent or manager who countersigned the policy and to the company's local authorized agent and to the public police officials and forward to the company full written details of the nature of the loss. Section F' of the policy provided that in the event of a claim for loss, the same shall be made forthwith in writing duly subscribed by the assured and certified to in manner required by the proof of loss form in use by the company. The policy further provided that the company should not be liable unless books and accounts are kept by the insured and the loss can be accurately determined therefrom by the company. The declaration averred that appellants complied with these several requirements and alleged that they gave immediate notice of their loss to the home office of appellee in Hartford, Connecticut and to the agent of the company who countersigned the policy, briefly stating particulars and probable amount of loss and also gave immediate notice thereof to appellee's authorized agent and the public police authorities. The declaration further averred that claim for loss was forthwith made in writing, duly subscribed by appellants and certified to in manner required by proof of

loss form in use by appellee and that said proof of loss was duly delivered to appellee by appellants. It was further averred in the declaration that books and accounts were kept prior and up to the date of the robbery by means of which the said loss can be accurately determined by the defendant.

The policy sued on was offered and admitted in evidence and by its terms it became effective on December 18, 1923, and insured appellants against loss by robbery for one year. The evidence tended to prove that on December 21, 1923, and at the time the policy was issued, appellants were conducting a retail jewelry business at 1530 Fifth avenue, Moline, Illinois, and on that evening, shortly after 11 o'clock, an unknown person entered appellants' place of business and perpetrated a robbery of merchandise belonging to appellants. Jean A. Pope testified on behalf of appellants to the effect that he was the authorized agent of appellee and solicited H. R. Cox, one of appellants, to take out this policy of insurance; that he did so and on the morning following the robbery and between seven and eight o'clock, Pope was notified by H. R. Cox by telephone of the robbery; that Pope in that conversation told Cox that he would notify the company and he did so; that the general office of the appellee company was in the Insurance Exchange Building, 175 West Jackson boulevard, Chicago, and it was to this office that Pope telephoned and got in communication with Mr. Brodt, the chief adjuster. This witness identified B. F. Amato's signature appearing on the policy sued on and testified that it was his office in the Insurance Exchange Building to which he telephoned on the morning following the reported robbery; that about 10:30 o'clock a. m. the same morning he called Mr. Cox on the phone and advised him that he had notified the company in Chicago and that a representative of the company would arrive by train about 2:30 o'clock that afternoon and for Cox to be sure and be at the store; that in the

afternoon Mr. Swan, an adjuster for appellee, came to Moline and he and Mr. Pope went to appellants' place of business and there had a conversation with Mr. Cox concerning the robbery and the methods employed by Cox in keeping books of account and records of sales and a list of the jewelry purported to have been stolen was given Swan by Cox. The following morning Mr. Pope and Mr. Swan, the adjuster of appellee, went to Mr. Cox's residence and had a further conversation with him about the robbery. The evidence is further that on December 23, 1923, appellants employed H. H. Herbst, an adjuster, to represent them in adjusting this loss and Mr. Herbst testified that on the next day he called at the general offices of appellee in the Insurance Exchange Building in Chicago and that he there informed the girl in the waiting room that he was there to report appellants' loss and was referred to a Mr. Anderson, whose office was in the general office of appellee, and Herbst there had a conversation with Anderson and endeavored to arrange a meeting at Moline in order that appellee might check over and adjust this loss. The evidence further tended to prove that W. H. Holmes was a representative of appellee and that he called upon H. R. Cox in Moline and he was furnished the books and records of appellants and from them he estimated the loss at between $28,000 and $29,000 and so stated to Cox and also to Reynold M. Johnson who testified upon one of the former hearings and whose testimony was read by agreement of the parties at this trial. The evidence also tends to prove that B. F. Secat was an investigator or adjuster for appellee and he called upon Cox and introduced him to one of appellee's present counsel, who prepared a statement which set forth the details of the robbery and a list of the articles of jewelry lost and their values and this statement was signed and sworn to by Cox on January 17, 1924. The evidence is further that the police officials of Moline

were notified immediately after the robber left the jewelry store.

It will be observed that the pertinent provisions of the policy with reference to notice did not require such notice to be in writing but did make it incumbent upon appellants to give immediate notice to the home office of the company in Hartford, Connecticut or to the general agent or manager who countersigned the policy. It is conceded by counsel for appellants that there is in the record no evidence, which was admitted by the Court, tending to prove the giving of notice of the loss to appellee at its home office in Hartford or to Mr. Amato in person, who countersigned the policy, but their counsel insists that the law is that notice need not be given to the executive officer named in the policy but such notice is sufficient if given and received at the company's place of business and is certainly adequate if such notice induces the insured to act. In support of this contention, counsel cite *Herron v. Peoria Marine & Fire Ins. Co.,* 28 Ill. 235, *Insurance Co. of North America v. McDowell & Brown,* 50 Ill. 120, and *Weininger v. Metropolitan Fire Ins. Co.,* 359 Ill. 584. It does not appear from the opinion in the *Herron* case, *supra,* what the requirements of the policy were with reference to giving notice of loss but in the course of its opinion, the court said: "As to the objection that notice was not given to the secretary of the company of the loss, it is sufficient if it was given and received at the office of the company." In *Insurance Co. of North America v. McDowell & Brown, supra,* the court in its opinion said: "There is no force in the objection that the companies did not have sufficient notice of the loss, as they had such notice as induced them to send their general agents to the place to investigate the loss; any notice that produces such a result is sufficient, without reference to its form or particulars. There is no question that the notice was promptly given to the local

agents, and that must suffice.'' We will hereafter refer to the *Weininger* case, *supra.*

In the instant case the evidence discloses that the policy sued on was countersigned at Chicago, Illinois, by B. F. Amato, deputy superintendent; that the general office of appellee was in Chicago; that the local agent of appellee in Moline gave notice of the loss by long distance phone to this general office of the countersigning deputy superintendent. Counsel for appellee insist, however, that inasmuch as the local agent did not report this loss personally to Mr. Amato, the countersigning agent, that the requirement of the policy was not met although they concede the notice that was given was both immediate and effective. As a result of that notice a representative of appellee arrived from Chicago in Moline the same afternoon for the purpose of investigating the loss. Upon his arrival he got in touch with the local representative of appellee and together they went to see Cox at his jewelry store. Furthermore, appellants, by their agent Herbst, on December 24, 1923, called at the office of the countersigning agent and reported this loss to some man at the counter, who told Herbst that the loss had been referred to the adjusting department. He was shown to that department and an office girl there referred him to Mr. Anderson, and there in this general office of appellee he conversed with Mr. Anderson and endeavored to get him to come to Moline to adjust the claim. In *Continental Life Ins. Co. v. Rogers,* 119 Ill. 474, it was held that where notice of loss has been given the company within the time provided by the terms of the policy and is received by the company without objection, the sufficiency of such notice cannot thereafter be questioned. Under the authorities, we think from all the evidence in this record that there was a substantial compliance with the requirement of the policy as to notice of loss.

It is next insisted by counsel for appellee that there is no evidence in the record sustaining the averments

of the declaration with reference to furnishing appellee with the required proofs of loss. The evidence upon this question is that shortly after the robbery, appellants employed Mr. Herbst to represent them in adjusting their loss under the policy sued on; that Herbst called at the Chicago office of appellee and on or about February 6, 1924, received from appellee a form upon which to make a proper proof of loss; that he had previously made a half dozen applications for such form to Mr. Holmes and to Mr. Anderson but his requests were refused. He finally got to see Mr. Brodt and at Mr. Brodt's suggestion he was given the blank form by Mr. Anderson. It further appears that Holmes, Anderson and Brodt were all employed by appellee as adjusters and had their offices in the general office of appellee in the Insurance Exchange Building at 175 West Jackson boulevard, Chicago; that he, Herbst, immediately filled in the form and made up a list of articles purported to have been stolen. This proof of loss was executed as follows: "Cox Jewelry Co., assured by H. R. Cox of and for said firm." The jurat was a printed form and recites that "the above named H. R. Cox Jewelry Company, by H. R. Cox of and for said firm, to me known, and who subscribed the same in my presence, and made oath that the foregoing statement and each and all of the schedules and papers hereunto annexed are full and true and without reservation." Underneath the signature of H. R. Cox appears the following: "(N. B. 'Proofs of loss' must be signed individually by all members of a firm, and by all parties insured in a dwelling who claim indemnity.)" The objection made by appellee to this proof of loss is that the evidence discloses that the Cox Jewelry Company is a partnership composed of H. R. Cox and A. B. Cox; that the proof of loss form requires information respecting the robbery over the signature and under the oath of all members of the firm; that A. B. Cox is a member of the firm but did not execute the proof of

loss. Furthermore, it is contended by counsel for appellee that the proof of loss was not complete as it referred to documents not made a part thereof. It appears further that this proof of loss was sent by Herbst by registered mail to appellee and received by it on February 14, 1924. It was offered in evidence and covers almost 10 pages of the abstract. The evidence discloses further that one day between December 29, 1923, and January 5, 1923, Holmes, the adjuster for appellee, called at appellants' store about 9:00 o'clock in the morning and at his request he was given the books and records of appellants and examined them and sought to make from them a record of the merchandise which appellants had on hand at the time of the robbery. Mr. Cox further testified that a week or two after the robbery Mr. Secat, representing appellee, came to his store and the affidavit hereinbefore referred to which was sworn to on January 17, 1924, was executed. Counsel for appellants state in their argument that this affidavit set forth full details of the robbery and listed the articles stolen and their values. It was admitted in evidence and covers 67 pages of the record, but counsel did not see fit to properly abstract it, simply reciting that "on pages 412 to 479 of the record is the affidavit of H. R. Cox, subscribed and sworn to on January 17, 1924 and delivered by him to the defendant company, said affidavit setting forth full details of the events of the robbery on December 21, 1923 and of the articles of jewelry lost in that robbery and their values." The proof of loss requested that assured state "the manner in which the robbery was committed and the names of all persons known or suspected to have been implicated therein." The proof of loss as submitted to appellee did not state how the robbery was committed or give the names of suspected persons but referred to this statement and affidavit and stated that it was taken by D. F. Secat, adjuster for the Aetna Casualty and Surety Company, which was

executed in the presence of Elmore H. Stafford and Ben De Jaeger, chief of police of the city of Moline, Illinois.

In *Weininger v. Metropolitan Fire Ins. Co.,* 359 Ill. 584, it appeared that the adjuster for the insured sent a notice of the loss to each of the several defendant companies and proofs of loss were prepared on regular forms provided for that purpose and sent to the company within the time specified in the policy, and in its opinion the Supreme Court said: ''By the weight of authority, if the insured attempted to comply with the requirements of the policies as to notice and proof of loss, the receipt and retention of the notice and proof without objection constitute a waiver of the insurers' right later to object thereto as not satisfying the requirement of the policies.'' In distinguishing the facts as they appeared in the *Weininger* case from the facts as they appeared in the case of *Feder v. Midland Casualty Co.,* 316 Ill. 552, the court at page 595 said: ''In the *Feder* case no written notice of the fire nor proof of loss was given to the insurer. The complainants in that case alleged performance of those conditions and then introduced evidence which tended to show a waiver of the conditions on the part of the defendant. In that situation it is manifest that, since there was no attempt to comply with those requirements of the policy, the insurer could not be estopped from setting up such defense by reason of its failure to insist on a strict compliance with the condition. That case, in our opinion, is not authority for the defendants' contention. In the case at bar the record presents not a waiver of performance of making proof of loss, but simply a waiver of the manner and form of proof of loss made. The defendants in receiving the proofs of loss, retaining them and failing to object to their form or sufficiency, accepted the proofs as a substantial compliance with the condition and thereby conceded that the complainants had performed this requirement of the poli-

cies. Such substantial compliance is sufficient to permit recovery (33 Corpus Juris 17) and may be proved under the allegations of the complainants' bill.''

Counsel for appellants concede that in the instant case the evidence does not disclose that appellee accepted and retained these proofs of loss without objection. In their argument they say: ''We had supposed this proof was in the record . . . after re-examining the record we can not find that this proof was made. It seems inadvertently to have escaped us on the trial. . . . If when the case was tried this time the Weininger decision had been available, the matter would have been so focused in our minds that such proof would have been made.'' Counsel for appellants then request that if this court deems this question of controlling importance, that they be permitted to make this additional proof in this court invoking as authority for so doing sec. 92 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 220. We do not believe that this provision of the Practice Act is applicable. Here we are reviewing the action of the trial court in directing a verdict for the defendant at the close of the plaintiffs' case. It was certainly never intended that this section of the Practice Act should be so construed as to give counsel two opportunities to prove their cases, one in the trial court and another in an appellate court. While the testimony here does tend to show that there was an attempt by the insured to comply with the provisions of the policy with reference to making proof of loss, the record is silent as to whether appellee accepted the proofs of loss submitted and is silent as to whether appellee retained or rejected them and there is no evidence of a waiver by appellee of the manner and form of proof of loss made. Furthermore, the policy sued on gave the name of the insured as the Cox Jewelry Company. The declaration stated that H. R. Cox and A. B. Cox, doing business under the name and style of

Cox Jewelry Company were the plaintiffs. The proof of loss form given appellants by appellee and which was sent to appellee required information over the signature and under the oath of all members of the firm. This was not done. H. R. Cox executed it but A. B. Cox did not. Furthermore, this proof of loss was not complete. It did not give the details of the robbery but referred to an affidavit of H. R. Cox. That portion of this affidavit claimed by reference to be an essential part of the proof of loss is not abstracted and this court should not be expected to examine the record for the purpose of reversing a judgment. *People v. Southern Gem Co.,* 332 Ill. 370.

It is also insisted by counsel for appellee that the evidence offered by appellants failed to prove the averment of the declaration that books of accounts were kept by the assured as provided by the policy. In our former opinion reported in 248 Ill. App. 209, Mr. Justice Jones, in commenting at page 218 upon an erroneous instruction that the trial court had given upon the first trial of this cause, said: ''The policy provided that there should be no liability unless books and accounts were kept by the assured and the loss could be accurately determined therefrom by the company. The instruction contravenes that provision of the policy. Such provisions in insurance policies not only serve to determine the amount of a loss, but, if proper books are kept, they will assist the insurer in obtaining the description of the articles stolen and other information, which might materially aid in their recovery. Such recovery would reduce the amount to be paid by the insurer under its liability. This is a substantial right of pecuniary advantage to the insurer, and one which cannot lawfully be taken away from it without its consent. Such a provision in a policy of insurance is not unreasonable, and where the insured with full knowledge of the conditions of the policy enters into a contract of

this character, it is one with which he must comply. *Niagara Fire Ins. Co. v. Forehand,* 169 Ill. 626.'' Upon the second appeal the opinion of this court was written by Mr. Justice Jett and with reference to this provision of the policy it was stated: ''The policy declared upon provides that there should be no liability unless books and accounts were kept by the assured, and the loss could be accurately determined therefrom by the company. It was charged in the declaration that books and accounts were kept up to and prior to the date of the robbery, by means of which said loss could be accurately determined by the appellant. In our former opinion we held that insurance companies have the right to require the one it insures to keep books and accounts, correctly detailing purchases, and showing sales, ready to be produced in the event of loss.''

The evidence discloses that the last inventory of appellants' stock of goods was taken on June 15, 1923, and every article of merchandise other than diamonds was enumerated upon this inventory which showed the cost of the article and the selling price. At this time what is spoken of in the record as the perpetual diamond inventory was compiled and each diamond was tagged and given a number and its then market price was fixed by H. R. Cox and this price and also the sale price was noted upon this inventory. After these inventories were made, any diamond which came into the store was entered upon this diamond inventory and when any diamond was sold, a line was drawn through the line of this inventory upon which such diamond was listed. The evidence further discloses that these inventories were kept in a loose leaf ledger in which was also kept the charge and note accounts of appellants' customers. This ledger and a cash sales register, together with a bank pass book and check book, were the only books kept by appellants except a book in which inventories for the preceding two years were found and also

a file book in which all the original invoices showing purchases for two or three years were kept. On the cash register all moneys received from sales of merchandise were rung up and the total was shown on register slips and at the close of the day's business these slips were filed in the safe and an entry made in the cash book each day of the total amount of the sales for that day, also the amount of cash paid out and the amount of money deposited in the bank. H. R. Cox testified that appellants' average profit on diamonds was 25 per cent and upon other merchandise forty per cent and continued: "Our sales register was our only record of sales and it recorded the total in dollars and cents of each day's business. It did not show the specific article sold or give a description of them or their number or their quality. The sales register was the only record of sales and the only thing we recorded in the cash or sales record was the total amount in dollars and cents of each day's business. The strip merely showed dollars and cents but did not print descriptions and did not show the percentage of profit. All diamonds selling for $25.00 down were included in this percentage. As to other articles of the jewelry company there was no specific record kept of the particular percentage of profit. The strip from the cash register and the sales record about which I have testified were the only records concerning sales. When there was a single transaction respecting a number of different articles, there would be only one amount rung up in the cash register."

At the time of the robbery then there were no books or records kept by appellants from which it would appear what articles of merchandise or jewelry, other than diamonds were in the store. It is true that the stock of goods on hand at that time would be those inventoried on June 15, 1923, plus those which the invoices showed had been purchased and received be-

tween June 15, 1923, and the time of the robbery, less those which had been sold during that period, but there was no book or record containing the description, kind or quality of any article that went out of the store from the date of the inventory until the robbery except the so-called perpetual diamond inventory, which did disclose a line drawn through several items, but there was nothing in the record itself that disclosed what that meant. Mr. Cox testified that this line was made when a diamond was sold but nothing appears upon the record as to when any diamond was sold.

It is therefore apparent from the testimony produced by appellants that from all their books and records there was no record of articles taken out of the store by way of sales or otherwise from the time of the inventory to the time of the robbery, that an examination of the so-called invoices do not, in many instances, disclose the kind, quality or value of the merchandise which came into appellants' store and that the perpetual diamond inventory did not, of itself, reveal the quality, quantity or value of the articles therein enumerated. The affidavit of H. R. Cox heretofore referred to and which was offered in evidence by appellants contained this sentence: "This affiant further states that he or assured kept no books or accounts from which independently of other sources the loss could be accurately determined therefrom by the Aetna Casualty and Surety Co., but that in ascertaining the amount of the loss and the articles taken it will be necessary for this assured to obtain further information from those from whom he has from time to time during the past six months purchased diamonds, diamond jewelry and other like articles for sale by the Cox Jewelry Co." This portion of this affidavit was not abstracted but is found in the record. From this affidavit and from the other evidence in the record it is apparent that appellants did not keep such books and

accounts as the policy required. Such provisions have been construed to require the insured to keep such records as will enable the insurer to determine its loss therefrom unaided by oral testimony except as to the manner or system of keeping such records. *Home Ins. Co. v. Williams,* 237 Fed. 171.

Counsel for appellants insist however that this provision of the policy is a condition subsequent and was so recognized by appellee as evidenced by its first special plea; that while their evidence disclosed the books kept by them and their bookkeeping methods and system, they did so only for the purpose of showing the amount of their loss and the manner in which it was arrived at. Under the pleadings, appellee set this provision up as an absolute defense and the burden of establishing such defense was on it, but appellants' own evidence disclosed facts destructive of their case and with the record in that condition the trial court was justified in directing a verdict. 64 C. J. 474. *Helm v. Illinois Commercial Men's Ass'n,* 279 Ill. 570.

We have not overlooked the several motions submitted by counsel for the respective parties herein and which were taken with the case. There was language indulged in by counsel in their respective briefs which should have been omitted. Such language was of no aid to the court in determining the questions presented by this record. Inasmuch, however, as counsel for both parties transgressed the proprieties of the profession in this respect, the motion and cross-motion to strike portions of the respective briefs of counsel will be denied. We have treated appellants' brief as sufficient to require us to pass upon the merits of this case and therefore their motion for leave to amend their original brief is denied.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*