**Joseph Weisberg, Appellee, v. United States Casualty Company, Appellant.**

**Gen. No. 38,963.**

Opinion filed January 4, 1937.

ROBERTSON, CROWE & SPENCE, of Chicago, for appellant; CARL E. ABRAHAMSON, of Chicago, of counsel.

ALEX M. GOLMAN, of Chicago, for appellee; DAVID F. SILVERZWEIG, of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action of contract, upon trial by the court there was a finding for plaintiff in the sum of $419 with judgment, from which defendant appeals. The contract was issued July 24, 1934, was a "Robbery (Hold-up) Policy, (Paymaster, Messenger, Office or Store), Number BRH 55819." By paragraph B of the policy defendant agreed to indemnify for losses of Outside Messenger-General Funds ("Section (c)) on money, securities and/or merchandise in the care and custody of a custodian, accompanied or unaccompanied by a guard outside the premises" to the amount of $500. The amount of the premium was $15. Paragraph B described "Loss Outside Premises General Funds" to be "Money, securities and/or merchandise, including the wallet, bag, satchel, safe or chest in which such property is contained, occasioned by Robbery or Attempt Thereat committed between 7 o'clock a. m. and 7 o'clock p. m. (within the Policy Period specified in Item II of the Declarations), from a custodian out-

side the Assured's premises but within the United States of America or the Dominion of Canada.''

The evidence shows that plaintiff was a peddler who was in the business of selling linoleum on the road from store to store, office to office, and other places. He had been in this business since 1921, and at the time of the robbery for which he claims indemnity used a Chevrolet truck, driven by a helper. The robbery occurred on United States Highway 12, near Crystal Lake, Illinois. Plaintiff obtained his linoleum from Charles Pinsky Carpet Company, 1826-1828 Roosevelt Road, Chicago, and on March 17, 1935, received from the carpet company 12 rolls of linoleum of the value of $294. He took this load of linoleum into various towns in Wisconsin, where he sold it, and in company with the driver was returning to Chicago when the robbery took place. He testified (was corroborated by his helper, and there is no evidence to the contrary) that $419 in currency (the amount for which judgment was obtained) was taken from him at that time.

Two defenses were interposed by the pleadings: First, there was a provision in the policy to the effect that the company should not be liable for any loss or damage, ''(i) Unless books and accounts are regularly kept by the Assured and are kept in such manner that the exact amount of loss can be accurately determined therefrom by the Company.'' Plaintiff, strictly speaking, did not keep any books and accounts in the sense in which those words are generally used. There is evidence, however, tending to show that at the time he took out the linoleum from the carpet company he received a bill of sale from that company, upon the stationery of the seller, which indicated that 12 rolls of linoleum of the value of $294 were sold to plaintiff on March 17, 1935. The testimony of the plaintiff and his helper is to the effect that upon each occasion upon which pieces of linoleum were sold to any of his customers, he made an entry upon this paper indicating

the sale and the amount for which the same was sold. The several items indicate sales amounting to $459. The testimony shows that plaintiff gave $20 to his helper; that hotel bills and expenses for gas, etc., were paid by him, and that including the currency in his pocket at the time he began the trip, there was a balance of $419, the amount which was taken. The bill of sale showing in a rough way the account of plaintiff's sales of linoleum is in evidence. Defendant insists that this paper fails to meet the requirements of the policy; that the provision was material to the risk and a compliance with it was absolutely necessary to enable defendant to ascertain the loss, if any, and protect itself against excessive and fraudulent claims. Defendant cites Cooley's Briefs on the Law of Insurance, 2nd edition, vol. 3, p. 2818; *Niagara Fire Insurance Co. v. Forehand,* 169 Ill. 626; *Farmers Fire Ins. Co. v. Bates & Co.,* 65 Ill. App. 37; *German Ins. Co. v. Bates & Co.,* 67 Ill. App. 370, and *Harris v. General Accident, Fire & Life Assur. Corp.,* 187 N. Y. S. 291; *Weinstein v. Globe Indemnity Co.,* 277 Pa. 388, 121 Atl. 316, 318.

This insurance policy is a somewhat formidable document covering several printed pages and evidently intended to be used in many and diverse situations, including insurance against robbery of large mercantile establishments conducted at a fixed place or office. The provision of the policy with reference to the keeping of books and accounts as applied to such establishments has been held entirely reasonable and necessary. *Cox Jewelry Co. v. Aetna Casualty & Surety Co. of Hartford, Conn.,* 286 Ill. App. 515. Such provision in a policy should be given a reasonable construction in view of the character of the business and all the circumstances connected with it. However, such a provision in a policy would seem to be a representation rather than a warranty. *Kaplan v. United States Fidelity & Guaranty Co.,* 255 Ill. App. 437, affirmed in

343 Ill. 44. Plaintiff contends in the first place, that the account kept complied with the provision in the policy, and in the second place, that since there was no conflict in the evidence as to the amount of the loss, no books or accounts were necessary. In view of the small amount of the insurance, the fact that the policy was limited to losses which might occur outside of the premises in which the business was situated, while the general form of the policy was evidently intended to be used also in the insurance of larger businesses conducted upon premises, we think it might not unreasonably be held that this provision of the policy as to books, etc., was not intended to be applicable to the business of a mere peddler of goods. This policy, by its terms, covers losses (outside the premises) of money and securities, and particularly says it shall cover "the wallet, bag, satchel, safe or chest in which the property is contained." The amount of such losses is not usually ascertainable by any books of account. In *Beaird v. New Jersey Plate Glass Co.*, 157 Ill. App. 1, it appeared that the insured and his partner kept a little book showing the amount of money received from a gambling room which they conducted, placed in boxes at the close of each day; that they also kept a sheet of paper upon which was marked down the amount of the saloon receipts for each day, which were placed in an envelope. These papers were in the safe in which the money was when the robbery took place, and were lost. The court said that while the matter of keeping the accounts was crude and informal, that if the statements contained therein were accurate they would show the amounts actually in the safe and from them the loss might be correctly determined, and refused to hold that there was such a failure to comply with the requirement of the policy as to justify the setting aside of the judgment. That case was not unlike this one.

In *Kaplan v. United States Fidelity & Guaranty Co.,* 255 Ill. App. 437, we pointed out that such a provision in a contract was a representation and not a warranty, and quoted with approval from *Olson v. Great Eastern Casualty Co.,* 149 Minn. 353, to the effect that it was sufficient compliance with a provision of this sort, "if the books were kept in such manner that, *with the assistance of those who kept them* or understood the system on which they were kept, the amount of purchases and sales could be ascertained and cash transactions distinguished from those on credits, although it might be slow and difficult to do this." We hold plaintiff is not precluded from recovery by this provision of the contract.

In the second place, the defendant contends that it is not liable for the reason that at the time the policy was obtained plaintiff represented to defendant that he had not sustained nor received any indemnity for any loss or damage by robbery within five years then last past. It is not denied that plaintiff sustained such loss and received such indemnity in October, 1933, prior to the execution of the policy. This statement appears in that part of the policy described as "Declarations," and is item No. 10 of 13 such declarations. Plaintiff's name is not signed thereto, and plaintiff denies that he ever made any such representation. His evidence on this point is uncontradicted, and he is corroborated by the testimony of the broker who obtained the policy from the general agent of the defendant company. The broker says that he at that time told the agent of the burglary which had occurred in 1933. He says the plaintiff did not make any written application for the insurance but called him on the 'phone and asked him to get the policy, and that was all that he said to him. This evidence is not denied. The defense cannot avail. *Atkinson v. National Council Knights & Ladies of Security,* 193 Ill. App. 215; *Niemann v. Security*

*Benefit Ass'n,* 350 Ill. 308. The burden of proof was on the defendant to establish both defenses. The finding of the court is entitled to the same weight as the verdict of a jury.

Since we felt obliged to quote from the policy where the confusing symbol "and/or" appears, we again condemn its use lest by passing it over we seem to approve. (See *City National Bank & Trust Co. v. Davis Hotel Corp.,* 280 Ill. App. 247; *Albers v. Indemnity Ins. Co.,* 283 Ill. App. 260.)

The policy in question, like most policies that come before us, is long, involved, and tends to confuse. In *Wisz v. Metropolitan Life Ins. Co.,* 277 Ill. App. 343, we said (p. 345):

"The policy in question, like all insurance policies, whether fire, life or indemnity, that it has been our duty to pass upon over a period of years, is long, involved and confusing. We have heretofore condemned the use of long policies in the case of *Kiefer Tanning Co. v. Alliance Ins. Co.,* 266 Ill. App. 362, which involved the construction of a fire insurance policy. We there said (p. 374): 'Why an insurance policy should not all be written on one page we are unable to understand. Certainly a policy of that length could be so drawn as to contain all the essential elements required to make a clear and concise contract.' "

The judgment is affirmed.

*Affirmed.*

O'Connor and McSurely, JJ., concur.