**BATTS RESTAURANT, INC.,**
**Plaintiff-Appellant,**

v.

**COMMERCIAL INSURANCE COMPANY OF NEWARK, Defendant-Appellee.**

**No. 16935.**

United States Court of Appeals
Seventh Circuit.

Jan. 6, 1969.

George C. Rabens, Chicago, Ill., for appellant.

Samuel Levin, Daniel J. Leahy, Chicago, Ill., for appellee.

Before CASTLE, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff, an Illinois corporation, operates Batt's Mama Restaurant at 114 East Cermak Road, Chicago, Illinois. In 1960, plaintiff purchased from defendant insurer, a New Jersey corporation, a $10,000 fidelity policy covering the loss of money or property sustained through any fraudulent or dishonest acts of employees.

In 1962, Rose Marie Wolf, a cashier at plaintiff's restaurant, started to misap-

propriate funds belonging to plaintiff. The losses were first discovered about November 15, 1964, and Miss Wolf was arrested three days thereafter and pleaded guilty to a felony charge. Nathan Batt had discovered Miss Wolf's guilt by noticing "that she was misplacing or taking [meal] checks and issuing them to waitresses and she was not ringing them up." After three or four days' observation, plaintiff "caught her tampering with the numbers [on the meal checks] and mishandling the checks," thus causing some of them to be missing.

To disguise her defalcations, Miss Wolf would substitute meal checks made out for smaller amounts than the actual meal checks, converting the difference to her own use. She destroyed the original, larger amount meal checks, so that only the forged meal checks remained in plaintiff's possession. Because of the destruction of the genuine meal checks and the failure to maintain other documentary safeguards, the company's records did not reveal the amount of Rose Marie Wolf's conversions.

Irving H. Waller, certified public accountant for plaintiff, stated in a deposition that he could not determine from plaintiff's books how much money had been taken by Rose Marie Wolf. In her deposition, Mrs. Rebecca Batt said that none of plaintiff's records would show how many meal checks were actually taken by Miss Wolf, and that Mrs. Batt could not tell how much money had been taken.[1] In her deposition, Miss Wolf testified that she did not know how much money she was taking each week or month, nor did she recall how many meal checks she gave to the waitresses, nor how much they would average. She said she never knew how much money she took from the plaintiff.

---

[1]. Mrs. Batt noticed that 100 books of 50 meal checks each were missing prior to July 13, 1964, but plaintiff maintained no records showing whether these books were delivered by the printer or whether they were used by Miss Wolf in her fraudulent scheme. Although Mrs. Batt's records showed that 13 books of meal checks were missing from July 13, 1964, to November 18, 1964, she was unable to tell from her records how many meal checks were taken by Miss Wolf or how much money she took even in that period.

Plaintiff's complaint was filed in the Circuit Court of Cook County, Illinois, Municipal Division, and was removed by defendant to the district court pursuant to Section 1441 of the Judicial Code (28 U.S.C. § 1441). There the defendant moved for summary judgment. The policy contained the following general provision: "THE FOREGOING INSURING AGREEMENTS [INCLUDING EMPLOYEE DISHONESTY COVERAGE] AND GENERAL AGREEMENTS ARE SUBJECT TO THE FOLLOWING CONDITIONS AND LIMITATIONS:". One of these conditions and limitations appears in Section 6 of the policy, providing that "The Insured shall keep records of all the insured property in such manner that the [insurance] Company can accurately determine therefrom the amount of loss." The summary judgment motion was based on plaintiff's failure to comply with Section 6.

The district court held that the insured must comply with the record-maintenance provision contained in Section 6 of the policy and that there had been no such compliance. The court pointed out that the insurer has a legitimate interest in requiring the insured to keep accurate records since losses are more easily and earlier discoverable if accurate records are kept. The court noted too that the records-maintenance provision prevents fraud or overreaching by the insured. We agree that judgment was properly entered for the defendant for want of plaintiff's compliance with Section 6.[2]

■ First of all, we are met with a jurisdictional hurdle, for the complaint "prays judgment against the defendant in the amount of $10,000.00, together with lawful interest thereon, and, pursuant to the Statute of the State of Illinois relating thereto, for an additional sum of $500.00 for its attorneys fees as part of the taxable costs of this action, in addition to all other costs as provided

by the laws of the State of Illinois." On our own initiative, we must be sure that more than the $10,000 jurisdictional minimum is in controversy. Peacock & Peacock, Inc. v. Stuyvesant Insurance Co., 332 F.2d 499 (8th Cir. 1964). But to justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 82 L.Ed. 845.

To recover $500 for attorney fees, plaintiff relies on Ill.Rev.Stats.1967, ch. 73, § 767, permitting recovery of attorney fees in the event that an insurer refuses to pay a claim where the "refusal is vexatious and without reasonable cause." In that event, reasonable attorney fees are to be awarded "as a part of the taxable costs."

■ Although the diversity provision grants federal jurisdiction of civil actions between citizens of different states only "wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs" (28 U.S.C. § 1332), it is well settled that the amount claimed for attorney fees must be added to the principal sum sued for in determining the amount in controversy, even though the state statute labels the fees as costs. Missouri State Life Insurance Co. v. Jones, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267. Therefore, the requisite jurisdictional amount has been claimed here. Peacock & Peacock, Inc. v. Stuyvesant Insurance Co., supra, 332 F.2d at p. 502; cf. Powers v. Fultz, 404 F.2d 50 (7th Cir. 1968).

■ Plaintiff insists, that substantial compliance with Section 6 of the policy is sufficient, citing Kaplan v. United States Fidelity & Guaranty Co., 255 Ill. App. 437 (1930), affirmed, 343 Ill. 44, 174 N.E. 834 (1931), and Beaird v. New Jersey Plate Glass Co., 157 Ill.App. 1 (1910). However, in those and other cases on which plaintiff relies,[3] the in-

---

2. We also agree with the district court that this policy is neither ambiguous nor equivocal. Accordingly, there is no room for construing it against the insurer.

3. Liverpool & London & Globe Insurance Co. v. Kearney, 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460; Home Insurance Co.

sureds did maintain sufficient records to reflect their loss, whereas here plaintiffs concededly kept no records of its meal receipts "in such manner that the [insurance] Company can accurately determine therefrom the amount of loss" (Section 6), even though plaintiff's bookkeeping system was consistent with accepted accounting principles.

In Cox v. Aetna Casualty & Surety Co., 286 Ill.App. 515, 3 N.E.2d 964 (1936), the court enforced a record-maintenance provision such as the one at bar, stating that it requires the insured to keep such records as will enable the insurer to determine its loss therefrom unaided by oral testimony (286 Ill.App. at p. 531, 3 N.E.2d 964).[4] Therefore, in the absence of such records, the court upheld the trial court's direction of a verdict for the insurer. Similarly, in Standard Accident Insurance Co. v. Ponsell's Drug Stores, Inc., 202 A.2d 271 (Del.Sup.Ct.1964), the court directed the entry of a summary judgment for the insurer because of the insured's failure to comply with a records-maintenance clause. It was possible for plaintiff to provide appropriate checks on its employees' honesty. First of all, it could have investigated the missing dinner checks or at least maintained a record of checks issued to waitresses so that other, unissued checks could not be substituted therefor. Also it could have kept tabs on gross cash meal receipts by reports from waitresses, maintaining duplicate genuine meal checks, tallying the cash register tapes with the genuine dinner checks, and checking to determine whether the cashier rang up the proper amounts for the genuine dinner checks. Requiring that meal checks be totalled on the cash register before being presented to the customer would also have created a record against which to check any losses. We do not think it unfair to impose this onus on plaintiff, for it had undertaken to maintain records that would accurately show any losses caused by employee dishonesty. Otherwise, it would have had to pay a higher premium for this coverage if, indeed, such coverage could even be obtained without some such precaution.

To avoid the rule of the *Cox* and *Ponsell* cases, plaintiff urges that defendant is estopped from relying on Section 6 because defendant knew of plaintiff's record-keeping methods prior to the loss by virtue of audits made under plaintiff's 1959–1961 public liability and workmen's compensation policies. However, an uncontroverted affidavit filed by one of the defendant's employees shows that such audits would not involve an insured's entire bookkeeping system or subordinate records showing the daily cash receipts. Plaintiff has not shown that defendant knew that the restaurant was not complying with Section 6. Therefore, the estoppel argument must be rejected. Similarly, there was no waiver of the Section 6 defense by failing to raise it until 8 days after Mrs. Batt's deposition was taken. Until then, defendant could not be sure that plaintiff had insufficient records to satisfy that provision. Nor was reliance induced by any waiver of the provision by an agent of the insurer with full knowledge of noncompliance, as in Piedmont Fire

v. Hightower, 22 F.2d 882 (5th Cir. 1927), certiorari denied, 276 U.S. 634, 48 S.Ct. 339, 72 L.Ed. 743; Weisberg v. United States Casualty Co., 288 Ill.App. 72, 5 N.E.2d 846 (1937) ; Illinois National Bank v. U. S. Fidelity & Guaranty Co., 253 Ill.App. 148 (1929).

4. See also American Mutual Liability Insurance Company v. Thomas & Howard Company, 233 F.2d 215, 219 (4th Cir. 1956) ; Dickerson v. Franklin Nat. Insurance Co., 130 F.2d 35, 38 (4th Cir. 1942) ; Globe Indemnity Co. v. Cohen, 106 F.2d 687, 689–690 (3d Cir. 1939), certiorari denied, 309 U.S. 660, 60 S.Ct. 513, 84 L.Ed. 1008 ; Cox v. American Guarantee & Liability Insurance Co., 155 F.Supp. 422, 424 (E.D.S.C.1957) ; Clark & Jones, Inc. v. American Mutual Liability Insurance Co., 129 F.Supp. 282 (E.D. Tenn.1955) ; and Miller v. American Bonding Company, 319 S.W.2d 530, 534 (Mo.Sup.Ct.1958).

Insurance Co. v. Ladin, 174 S.W.2d 991, 992 (Tex.Civ.App.1943), cited by plaintiff.

Affirmed.